**Guadalupe A. SANCHEZ, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 92S03–0009–CR–518.

Supreme Court of Indiana.

June 26, 2001.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Barbara Gasper Hines, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

We hold that Indiana Code section 35–41–2–5, prohibiting the use of evidence of voluntary intoxication to negate the mens rea requirement in criminal cases, does not violate the Indiana Constitution.

**Factual and Procedural Background**

On the night of July 6, 1998, Guadalupe Sanchez attended a birthday party in a trailer in Allen County, Indiana. All nine people at the party were drinking and some were smoking marijuana. Sanchez was noticeably intoxicated after consuming between two and twenty-four beers and several glasses of tequila. He was asked to leave after he was accused of "grabbing all the girls' butts."

Sanchez soon returned to the trailer with a gun. He held the four remaining occupants of the trailer hostage while he attempted to find a woman who had already left the party. After the four hostages convinced Sanchez that they did not know where the woman was, he ordered one of the hostages to remove all of the telephones in the trailer, took the phones, and forced seventeen-year-old H.S. to leave with him.

Sanchez and H.S. walked for thirty minutes to a cornfield where Sanchez forced H.S. to remove her clothes and then raped her. When she complained that he was hurting her, Sanchez performed oral sex on her, and then raped her several more times. The pair then walked three and one-half miles to Sanchez's house, hiding in ditches when cars passed. When they reached the house, Sanchez took H.S. to the basement and again raped her. Both Sanchez and H.S. then fell asleep.

Early that morning, the police arrived and found Sanchez asleep next to H.S. with a loaded weapon near his right hand and his left hand around H.S.'s neck. At trial, the trial court gave the following instruction over Sanchez's objection: "Voluntary intoxication is not a defense to the charge of Rape and Confinement. You may not take voluntary intoxication into consideration in determining whether the Defendant acted knowingly or intentionally, as alleged in the information." This instruction accurately reflects Indiana law, effective July 1, 1997, as codified in Indiana Code section 35–41–2–5. Pub. L. No. 210–1997, § 3, 1997 Ind. Acts 2938. A jury convicted Sanchez of rape and criminal confinement and he was sentenced to forty years imprisonment.

On appeal, Sanchez argues that it was error to give the voluntary intoxication

instruction because the Due Course of Law provision of the Indiana Constitution and several other state constitutional provisions establish his right to present a voluntary intoxication defense. The Court of Appeals, after an extensive examination of the origin of Article I, Section 12 and the history of intoxication as a defense, found that Sanchez had provided no independent analysis supporting a due course of law claim under the Indiana Constitution, and therefore evaluated this issue under federal due process doctrine. *Sanchez v. State*, 732 N.E.2d 165, 173 (Ind.Ct. App.2000). The Court of Appeals found *Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), dispositive. The court concluded that there was no federal due process violation because, in the terms of the plurality opinion in *Egelhoff*, prohibiting evidence of intoxication did not offend "a principle of justice so rooted in the traditions and conscience of our people so as to be ranked fundamental." *Sanchez*, 732 N.E.2d at 173.

### I. Voluntary Intoxication as a Defense Under Indiana Law

The Court of Appeals opinion contains a more detailed account of the history of voluntary intoxication as a defense to the mens rea element of crimes. In summary, at the time of the debates surrounding the 1851 Constitution, drunkenness and intoxicating liquors were viewed quite harshly. Proposals to the Constitution were made to prohibit licenses to sell liquor and to prevent the State from benefiting from liquor sales. At common law, intoxication was itself an offense, and the prevailing view was that one crime was no defense to another.[1] By 1860, this Court, consistent with other states, had come to the view that evidence of intoxication might be allowed in certain homicide crimes. *O'Herrin v. State*, 14 Ind. 420, 420, 1860 WL 4131 (1860). Thirty years later, this Court held that evidence of intoxication was admissible to reduce a first-degree murder conviction to second-degree. *Aszman v. State*, 123 Ind. 347, 353–59, 24 N.E. 123, 125–27 (1890). By 1901, the Court had extended the use of intoxication evidence to all crimes requiring proof of specific intent. *Booher v. State*, 156 Ind. 435, 448–49, 60 N.E. 156, 160 (1901). This became the majority position in the United States. *See Montana v. Egelhoff*, 518 U.S. 37, 46–47, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996).

In 1980, the legislature added Indiana Code section 35–41–3–5(b), which attempted to limit the use of voluntary intoxication as a defense to crimes that required "with intent to" or "with intention to." Four years later, in *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind.1984), this Court held that, "[a]ny factor which serves as a denial of the existence of mens rea must be considered by a trier of fact before a guilty finding is entered," and concluded that the statute was unconstitutional.

In 1996, the United States Supreme Court held that a state could prohibit a criminal defendant from offering evidence of voluntary intoxication to negate the requisite mens rea without violating the Due Process Clause of the Fourteenth Amendment. *Egelhoff*, 518 U.S. at 56, 116 S.Ct. 2013. Therefore, as we observed in *State v. Van Cleave*, 674 N.E.2d 1293, 1302 n. 15 (Ind.1996), the *Terry* doctrine is "no longer good law" insofar as it is grounded in the federal constitutional guarantee of due process.

---

1. This attitude towards intoxication was not limited to Indiana. *E.g., United States v. Cornell*, 25 F. Cas. 650, 657–58 (C.C.D.R.I.1820) (No. 14,868) ("Drunkenness is a gross vice, and in the contemplation of some of our laws is a crime....").

In 1997, in response to *Egelhoff*, the legislature enacted Indiana Code section 35–41–2–5. This section provides: "Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense … [with exceptions not relevant here]." If this statute is consistent with the state constitution, the instruction in Sanchez's trial properly captured the law of Indiana governing a claim of lack of intent by reason of voluntary intoxication. As explained below, compatibility of the statute with the federal constitution was established in *Egelhoff*, but the state constitutional issues have not been resolved by this Court.

## II.  Article I, Section 12—Due Course of Law and "Substantive Due Process"

■ Sanchez first argues that Indiana's Due Course of Law provision, when read in conjunction with the other constitutional provisions, "protected Sanchez's ability to challenge the State's proof of his intent by putting on a defense of voluntary intoxication." According to Sanchez, Indiana Code section 35–41–2–5[2] is unconstitutional because it violates Article I, Section 12, in addition to several other constitutional provisions. Although he does not analyze Section 12 independently of other constitutional provisions, Sanchez phrases his argument in terms of due course of law. His contention seems to be that the criminal protections in the other sections of the Indiana Constitution create either a "protectable interest" under the Due Course of Law provision or establish that the voluntary intoxication defense is "firmly ingrained" and, therefore, cannot be abolished by the legislature because of the Due

Course of Law provision. The State tersely responds that, "Clearly the [voluntary intoxication] instruction does not violate the Indiana Constitution," relying on the proposition that due course of law claims are to be examined using the same analysis as federal due process claims. We agree with the State's conclusion, but not with its reasoning.

No case from this Court other than *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind. 1984), has considered the need for a voluntary intoxication defense under either the federal or state constitution. *Terry* did not state in so many words that a statutory abolition of the defense of voluntary intoxication is prohibited by the Indiana Constitution. We nevertheless have the proposition from *Terry* that the issue presented in that case was whether elimination of voluntary intoxication as a defense "is violative of the Constitution of the United States and the State of Indiana." *Terry*, 465 N.E.2d at 1087. The constitutional basis for *Terry's* conclusion that the voluntary intoxication statute is "void and without effect" is not clear. *Id.* at 1088. *Terry* adopted the concurring opinion in *Sills v. State*, 463 N.E.2d 228, 240 (Ind. 1984) (Givan, C.J.), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 569–70 (Ind.1995), which took the view that every crime necessarily has a mens rea requirement. *Sills* did not make clear whether a specific constitutional provision was thought to impose such a requirement, or, if so, what provision of the federal or state constitution it was. In sum, although *Terry*, via *Sills*, suggests that the Indiana Constitution forbids a limitation on the voluntary intoxication defense, neither opinion indicates what provision of the state constitution supports that conclusion.

---

**2.** Sanchez also challenges Indiana Code section 35–41–3–5 which provides for the defense of involuntary intoxication. Because he does not present a separate argument under this section, we do not address it.

The same is true of the concurrence in this case.

■■■ Sanchez points to the "due course of law" phrase as the source of his Indiana constitutional claim. Questions arising under the Indiana Constitution are to be resolved "by examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Indiana Gaming Comm'n v. Moseley*, 643 N.E.2d 296, 298 (Ind.1994). And, the first line of inquiry in any constitutional case is the text of the constitution itself. *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind.1998). Article I, Section 12 provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." By the terms of Section 12, only the second sentence of that section is relevant in the criminal context, and that sentence gives no guidance on the need vel non for a defense based on lack of mens rea for any reason, let alone for voluntary intoxication.

Other interpretative tools in addition to language analysis are also of limited use here. There is no unique Indiana history surrounding the adoption of this clause in 1816 or its redrafting in 1851, *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 974 (Ind. 2000), but the interpretation suggested by this language is supported by the history of the due course of law doctrine and by the case law surrounding Article I, Section 12. Due course of law provisions appear to stem from Sir Edward Coke's commentary on the Magna Carta.[3] Their basic thrust is that "courts will adhere to the law, rather than whim or corruption, in dispensing justice to litigants." Jennifer Friesen, *State Constitutional Law* § 6–2(a) (2d ed. 1996). These provisions have been interpreted to be a response to the abuses that were present in England at that time, including bribes to delay or expedite the judicial system. *Id.* Twenty-one states share similar provisions encompassing the idea that the "very essence of civil liberty certainly consists in the right of every individual to claim the protection of laws, whenever he receives an injury." *Id.* at § 6.2(b) & App. 6 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803)).

■■ So viewed, the Due Course of Law provision is applicable to civil proceedings, but provides none of the criminal protections of its federal counterpart. As we recently noted in *Melroe*, 729 N.E.2d at 976 & n. 2, all of the previous cases that have found any criminal protection in the first sentence of Article I, Section 12 have done so based on "due process" without any analysis of the independent meaning of the Due Course of Law provision. Because the federal constitution required the results in those cases, appending a state "due process" doctrine without explanation was unnecessary, and, we think, incorrect as well. Rather, "[b]y its terms, [the first sentence of Article I, Section 12] applies only in the civil context." *Id.* at 976.

The second sentence of Article I, Section 12 refers to "justice" being administered "completely." Article I, Section 1 embodies the provision in the Declaration of Independence that guarantees a right to "life, liberty, and the pursuit of happiness." Neither of these, and no other provision of

---

**3.** Lord Coke stated that, "[E]very Subject of this Realm, for injury done to him in bonds, ferris, vel persona [goods, land, or person] ... may take his remedy by the court of Law ...." Lord Coke's Second Institute Explicating Article 40, 55–56 (4th ed. 1671).

the Indiana Constitution, can be claimed to be the express limitation on governmental action found in the Fifth and Fourteenth Amendments. Nevertheless, we are satisfied that *Terry* was correct in its implicit assumption that fundamental fairness in judicial proceedings is assumed and required by our state constitution. The common law has long been a basic building block of Indiana law. *See* Ind. Code § 1–1–2–1 (1998) (adopting language from 1 Ind. Rev. Stat. ch. 61, § 1 (1852)). As the Court of Appeals noted, this Court has frequently referred to a "federal and state" constitutional requirement of "due process." *Sanchez*, 732 N.E.2d at 171–72. Although technically inaccurate, we think these references reflect the common understanding that courts of this state are constitutionally bound by the basic concepts of fairness that are frequently identified with "due process" in the federal constitution.

We agree that, in general terms, this concept of fairness embraces the opportunity to present evidence relevant to a defense, whether or not that evidence is also supported by the terms of the Article I, Section 13 right to compel attendance of witnesses. We thus have no quarrel with the concurrence's claim that the constitution of our state requires that a defendant have the opportunity to present evidence on a mens rea element or any other element or recognized defense. But we think the legislature has redefined the mens rea element in Indiana to render irrelevant the evidence that Sanchez and the concurrence would present.[4] For that reason, although the state constitutional right in Article I, Section 12 and federal due process are not necessarily identical, in this instance, we reach the same conclusion under our state constitution as the United States Supreme Court reached in *Egelhoff* under the Fourteenth Amendment.

### III. *Terry* and *Sills* and the Debate over Strict Liability

We do not agree with *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind.1984), to the extent it suggested that the Indiana Constitution contains an inherent bar to the elimination of voluntary intoxication as a means of negating the mens rea element of a crime. And although we agree with the concurrence that constitutional precedent should not be lightly disregarded, we do not consider *Terry* and *Sills v. State*, 463 N.E.2d 228, 240 (Ind.1984), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 569–70 (Ind.1995), to contain more than casual references to the state constitution.

As already noted, there are limits on what the legislature may criminalize, even in the absence of a specific constitutional bar. Because there is no general due process clause in our state constitution, and

---

4. The very articles cited by the concurrence make the point that it is for the legislature to define the crimes. As Professor Bilionis put it in discussing the classic academic literature criticizing strict liability:

> The problem with all of this, as Hart well knew, is that the Constitution never defines "crime" as such and that few who have worn the judicial robes have sensed in themselves an individual capacity to trump forthright legislative decisions to attach criminal stigma to X or to any other act or omission that is not privileged by virtue of a recognized constitutional right.

Louis D. Bilionis, *Process, the Constitution, and Substantive Criminal Law*, 96 Mich. L.Rev. 1269, 1277 (1998). Indeed, it is notable that none of the articles on strict liability cited by the concurrence discuss *Egelhoff* except to observe it as an example of the demise of substantive due process limitations on criminal legislation. We think that is no accident. The problems are quite distinct from both a jurisprudential and precedential point of view.

no specific provision addressing the issue, if there is a mens rea requirement that the state constitution imposes on this or any other crime, it must derive from this fairness concept. But courts must be careful to avoid substituting their judgment for those of the more politically responsive branches. Federal due process limitations on substantive provisions of criminal law are largely a dead letter today, having yielded to procedural (*Brady*[5]) and structural (*Miranda*[6], *Batson*[7]) reforms in the last half century. Finding substantive criminal law constraints in our state constitution is even harder where there is no specific provision such as the Ex Post Facto clause. Federal substantive due process jurisprudence as a means of judicial override of legislative policy is often criticized as anchorless. In the Indiana Constitution, we have not even a due process clause to hold our jurisprudential vessel steady against the shifting tides of judicial inclinations. We also have the constitutional directive in Article I, Section 1 that "all power is inherent in the people." This too suggests deference to legislation that does not run afoul of a specific constitutional provision.

For all of the foregoing reasons, we think constitutional rights not grounded in a specific constitutional provision should not be readily discovered. Specifically, we do not agree with the *Sills* concurrence, cited with approval in *Terry*, to the extent it takes the view that intent is a constitutionally required element of every crime. To support that view, the concurrence in *Sills* explains the case law supporting strict criminal liability as in reality finding an "implied intent." 463 N.E.2d at 241. *Smith v. California*, 361 U.S. 147, 80 S.Ct.

215, 4 L.Ed.2d 205 (1959), is cited for the proposition that every crime requires intent, even though that case expressly stated that, "it is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter." *Id.* at 150, 80 S.Ct. 215. To explain this apparent rejection of the necessity of a mens rea element, the *Sills* concurrence contended that some laws, e.g., food and drug regulatory statutes, require strict liability to serve their purposes, and, therefore, it is "necessary" to imply intent under some circumstances. 463 N.E.2d at 241. We assume the reference is to cases such as *United States v. Park*, 421 U.S. 658, 672–73, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), and *United States v. Dotterweich*, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943), upholding strict criminal liability under some circumstances. We think it is more candid to acknowledge, as *Smith* holds, that some crimes do not have a mens rea component, rather than to contend that intent is always required, but may be implied if necessary. 361 U.S at 150, 80 S.Ct. 215.

We do agree that a crime requires some voluntary action, and perhaps that is all *Terry* and *Sills* address. *Sills* cites an example that was contended to illustrate the need for an intent requirement for every crime. Although acknowledging that running a red light is an offense as to which lack of intent is no defense, *Sills* cites it as a case where implied intent is necessary. 463 N.E.2d at 241. To prove its point, *Sills* posed the example of a motorist who is struck by a rock and rendered unconscious while the car proceeds through the light. *Id.* The contention is

---

**5.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

that no judge or jury should convict under those conditions. The conclusion is generally correct, but we think this example does not establish that intent is an element, but rather reflects the usual assumption that voluntary action is a component of a crime. *See* Ind. Code § 35–41–2–1 (1998); *cf. McClain v. State,* 678 N.E.2d 104, 107 (Ind.1997).

■■■ To the extent some have suggested that statutes similar to this eliminate the commonly understood requirement of voluntary actions necessary for culpability,[8] we disagree. The statute provides that voluntary intoxication "may not be taken into consideration in determining the existence of a mental state that is an element of the offense." Like all statutes in derogation of the common law, it is to be strictly construed. *Durham v. U–Haul Int'l,* 745 N.E.2d 755, 759 (Ind.2001). We think "an element of the offense" refers to each unique mental element set forth in the statute defining the crime, and not to the general requirement of voluntary action that underlies all crimes, but is typically not articulated in the statutes except as it is found in the overriding provision of Indiana Code section 35–41–2–1.[9] The Indiana intoxication statute eliminates the requirement that the voluntarily intoxicated defendant acted "knowingly" or "intentionally" as to those crimes that include those elements.[10] But even if there may be an act rendered involuntary by intoxication, itself a doubtful premise in most circumstances, the legislature has decreed that the intoxication, if voluntary, supplies the general requirement of a voluntary act. That is sufficient to place the voluntarily intoxicated offender at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime.

The concurrence contends that the need for voluntary acts cannot be supplied by voluntary intoxication. As we see it, the issues are: first, what conduct the legislature has chosen to prohibit; and second, whether there is any constitutional bar to criminalizing that conduct. It may be unwise to impose strict liability for actions taken by voluntarily intoxicated persons. But the issue before us is whether the legislature has so provided, and, if so, whether it is unconstitutional. If the statute so provides, and the constitution presents no barrier to that legislation, evidence of voluntary intoxication may not be presented to negate mens rea.

Providing that a voluntarily intoxicated person is responsible for his or her actions to the same degree as a sober person does not criminalize activity that is wholly innocent because of ignorance of an obscure law or lack of knowledge of relevant facts. Rather, it substitutes an element of voluntary intoxication to the point that a person can claim ignorance of his own actions for the mens rea otherwise required as to the wrongful conduct itself. In this respect, it is similar to felony murder, which accepts the mens rea of the underlying felony as sufficient for murder. Both involve attaching more serious penal consequences

---

**8.** Ronald J. Allen, *Foreward: Montana v. Egelhoff—Reflections on the Limits of Legislative Imagination and Judicial Authority,* 87 J. Crim. L. & Criminology 633, 644 (1997).

**9.** Indiana Code section 35–41–2–1 reads, "A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense."

**10.** Thus, although awareness of the likelihood of severe bodily injury is ordinarily an element of murder, it is not necessary for the voluntarily intoxicated killer to be convicted of murder.

to an activity that the legislature may view as reprehensible in itself if it produces greater harm than it typically does. As such, neither presents the problem of criminalizing activity that most would regard as wholly blameless,[11] or even the issue of individual criminal responsibility for organizational failures without proof of individual mens rea.[12]

Sanchez individually and alone inflicted this night of terror on his victim. His conduct was plainly at the core of the circle of culpability. The issue is whether the legislature may hold him criminally responsible notwithstanding a claim of intoxication. We think the legislature had conventional crimes—murder, battery, rape, and so forth—in mind when it provided that voluntary intoxication does not negate the mens rea element. So applied, that treatment of intoxication does not criminalize activity that ordinary citizens would consider benign. Rather, it supplements the "knowing" and "intentional" elements with a third condition. The statute acts qualitatively the same as felony murder, and both are constitutional forms of strict liability. If and when we are confronted with a claim that intoxication was accompanied by an act wholly innocent if taken by a sober person, we can consider the issues those facts raise.

Until 1997 a voluntarily intoxicated defendant in Indiana could claim that his actions were neither "knowing" or "intentional." Yet the pages of the Northeast Reporter are full of cases reciting that the defendant's action in "executing a plan," operating a motor vehicle, or otherwise demonstrating physical capacity were enough to establish the requisite mens rea

as a matter of law. Assuming intoxication has both rendered a person incapable of apprehending the consequences or wrongfulness of his acts and still left him capable of performing them, we think the legislature may constitutionally provide that the perpetrator whose ignorance is the product of self-induced intoxication rather than moral blindness is equally culpable. In this case, there can be no doubt from the extended sequence of events that Sanchez acted voluntarily, however impaired he may have been. The legislature has chosen to treat ignorance of the consequences of one's act induced by voluntary intoxication the same as simple ignorance of the law. Even strong opponents of strict liability doctrine agree that it may be appropriate for some crimes. Professor Hart's work is usually cited as one of the fountainheads of attacks on strict liability. *See* Henry M. Hart, Jr., *The Aims of the Criminal Law,* 23 Law & Contemp. Probs. 401 (1958). But he recognized that "any member of the community who does these things without knowing they are criminal is blameworthy, as much for his lack of knowledge as for his actual conduct." *Id.* at 413.

## IV. The Statute as a Redefinition of the Mens Rea Requirement

Because we conclude that a statute may properly impose criminal liability for some actions without a mens rea element, the question becomes whether the statute before us does that. We think *Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), is instructive on that point. Four Justices constituted the plurality sustaining the Montana statute in

---

11. *See Lambert v. California,* 355 U.S. 225, 229–30, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), (holding it a violation of federal due process to convict under a Los Angeles ordinance prohibiting failure to register as a convicted felon within five days after residing in the city.)

12. *See, e.g., Dotterweich,* 320 U.S. at 280–81, 64 S.Ct. 134 (upholding strict liability of corporate officers for violations by the organization without an individual mens rea).

*Egelhoff* on the ground that a state may exclude relevant evidence if its exclusion does not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 43, 116 S.Ct. 2013 (quoting *Patterson v. New York,* 432 U.S. 197, 201–02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). After examining the history of voluntary intoxication in much more detail than is recounted here, the Court then concluded that a voluntary intoxication defense is not a fundamental right protected by federal due process.

Justices Ginsburg, Souter, and O'Connor, in individual concurrences or dissents, agreed that a state could constitutionally define the mental element of a crime to be satisfied by voluntary intoxication. Justice Ginsburg thought that this was the proper view of the Montana statute and concurred on that basis. *Id.* at 59–60, 116 S.Ct. 2013. Justice Souter also thought the statute seemed to do that, but felt constrained by the Montana Supreme Court's position that the statute prevented the introduction of relevant evidence and therefore violated due process. *Id.* at 73–74, 116 S.Ct. 2013. Justice O'Connor agreed that a state could constitutionally define mens rea, but read the statute to exclude relevant evidence, and, therefore, to deny procedural due process. *Id.* at 71–73, 116 S.Ct. 2013.

■ Unlike the Montana Supreme Court, we read the Indiana statute as redefining the elements of crimes, and not as excluding relevant evidence. As a matter of form, the statute does not speak in terms of admissible evidence. It was added to the Indiana Code as a new section for Chapter 35–41–2, which is entitled "Basis of Criminal Liability," itself a part of Article 35–41, entitled "Substantive Criminal Provisions." This reading is reinforced by our knowledge that the Indiana statute was adopted after *Egelhoff,* and with the benefit of its analysis and the knowledge that the result in *Egelhoff* turned on Justice Ginsburg's reading of the Montana statute. Justice Breyer, joined by Justice Stevens, pointed out that reading the Montana statute as equivalent to a redefinition of the mental elements of crimes has some potentially "anomalous results." *Id.* at 79, 116 S.Ct. 2013. He asks why, if this were the intended result, would the legislation not have done so explicitly. *Id.* at 80, 116 S.Ct. 2013. We think *Egelhoff* itself suggests the answer to that question for Indiana. The language of the Indiana statute is essentially identical to the Montana version, which had already passed federal constitutional muster in *Egelhoff.* That is a good enough reason for the Indiana legislature to stick with the tried and true. Second, and less important, the criminal laws of this state are filled with various mens rea provisions. An attempt to redefine all in a single provision would fit poorly with the codification effort to group statutes in logically related categories, and amending these crimes piecemeal would be a much more daunting drafting task. Because we view the voluntary intoxication statute as defining the elements of crimes in this state, we do not find it offensive to either the federal due process clause or any notion of fundamental fairness embedded in our state constitution.

Because the statute does not "exclude relevant evidence," it does not necessarily proscribe evidence of the defendant's use of alcohol or drugs. Rather, as occurred in this case, this evidence may be admissible as general background,[13] or as relevant

13. *See Elliott v. State,* 630 N.E.2d 202, 204 (Ind.1994); *McFarland v. State,* 271 Ind. 105, 111, 390 N.E.2d 989, 993 (1979) ("Moreover, we must recognize that a considerable leeway is allowed even on direct examination for proof of facts which are not really offered as

to something other than lack of mens rea, e.g., identity. Perhaps it may also be relevant to a claim of accident under other circumstances. But none of these issues are raised here. This is not to say, as the concurrence contends, that other rules of evidence, specifically, Indiana Rule of Evidence 404(b), may not preclude use of this evidence if the defense objects. To the contrary, *Swanson v. State*, 666 N.E.2d 397, 398–99 (Ind.1996), cited by the concurrence, holds that Rule 404(b) may preclude evidence of other "bad acts." We think this holding is fully consistent with our ruling today. Here, evidence of defendant's intoxication was admitted and embraced by the defendant. If such evidence is admitted, the instruction given by the trial court is proper. Moreover, the trial court may properly exclude evidence of blood alcohol content, as was done in this case, if it finds that it bears solely on the degree of intoxication.

The concurrence purports to agree with Justice O'Connor's concurrence in *Egelhoff*. But as already noted, although Justice O'Connor readily agreed with the plurality that a state could constitutionally redefine the mens rea elements to elevate voluntary intoxication, she felt bound by the Montana Supreme Court's view of the Montana statute. *Egelhoff*, 518 U.S. at 71–73, 116 S.Ct. 2013. Because we construe our statute as redefining the requisite mens rea, we assume Justice O'Connor would agree that the Indiana statute is constitutional under federal law.

In sum, we agree with the concurrence that the State is obligated to prove all elements of a crime. And we agree that a defendant has a right to present relevant evidence to negate an element of any

charged offense. But we disagree with the concurrence that the voluntary intoxication statute denies this right. The statute redefines the requirement of mens rea to include voluntary intoxication, in addition to the traditional mental states, i.e., intentionally, knowingly, and recklessly. Thus, evidence of voluntary intoxication does not negate the mens rea requirement, as the concurrence contends. Rather, it satisfies this element of the crime.

## V. Article I, Section 13—Right to Present a Defense

■ Sanchez also contends that exclusion of evidence showing his voluntary intoxication violates Article I, Section 13 of the Indiana Constitution. That section provides: "In all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel...." He claims that his right to be heard provides him a right to present his defenses. It is correct that the Indiana Constitution "places a unique value upon the desire of an individual accused of a crime to speak out personally in the courtroom and state what in his mind constitutes a predicate for his innocence of the charges." *Campbell v. State*, 622 N.E.2d 495, 498 (Ind. 1993), *abrogated on other grounds by Richardson v. State*, 717 N.E.2d 32, 49 n. 36 (Ind.1999). The United States Supreme Court has similarly described the defendant's federal constitutional right "to present his own version of events in his words" as "fundamental." *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

■ But Article I, Section 13 does not require that any specific claim of a defense be recognized by Indiana law. Rather, it gives defendants the right to

bearing on the dispute, however defined, but merely as details which fill in the background of the narrative and give it interest, color, and lifelikeness.") (citations omitted); *Buise v.*

*State*, 258 Ind. 321, 325, 281 N.E.2d 93, 96 (1972); *see generally* Fed.R.Evid. 401 advisory committee's note; 1 *McCormick on Evidence* § 185 (John W. Strong ed., 5th ed. 1999).

present evidence in support of those defenses that are recognized by the law of the state. The language of the provision refers to the right of a defendant to be heard by himself and counsel. It protects against limitations on a defendant's right to testify at trial and to be represented by either himself or counsel. As this Court recently held in *Roach v. State*, under the federal constitutional right to present a defense, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 695 N.E.2d 934, 939 (Ind.1998) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). One of the rules of evidence is the requirement of relevance. Ind. Evidence Rule 401. If the substantive law renders the evidence irrelevant—which is what the statute does to Sanchez's claim of voluntary intoxication—there is no right under Article I, Section 13 to present it. We agree with the concurrence that a defendant has a right to present evidence to negate any element of any crime. We disagree that the point is relevant here because the statute, by definition with elements different than the concurrence would like, renders the evidence irrelevant.

Accordingly, we hold that Indiana Code section 35–41–2–5 does not violate Article I, Section 13 of the Indiana Constitution.

## VI. Article I, Section 19—Jury to Determine Law and Facts

Article I, Section 19 reads, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Sanchez contends that Indiana Code section 35–41–2–5 violates his right to have the jury determine the law and the facts pursuant to Article I, Section 19.

Specifically, he argues that the voluntary intoxication instruction binds the jury to find intent where it may not have been proved, or to disregard evidence that negates intent.

We do not find Sanchez's claim persuasive. The voluntary intoxication instruction does not unconstitutionally compel the jury to make a finding of intent. In effect, it provides that the crime is committed if it is done with the requisite mens rea or as a result of voluntary intoxication. This statutory scheme does not violate either the federal constitution [14] or the jury's ability to determine "the law and the facts."

## VII. Article I, Section 23—Equal Privileges and Immunities

Sanchez finally contends that Indiana Code section 35–41–2–5 violates Indiana's Privileges and Immunities clause, Article I, Section 23. He claims that the statute created a class of voluntarily intoxicated criminal defendants who are not allowed to disprove their intent to commit the crime and are held criminally responsible even if they did not act knowingly or intentionally. This Court has enunciated a two-part test for determining whether a statute granting unequal privileges or immunities to differing classes of persons passes constitutional muster under Article I, Section 23: "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994). In applying this test, the judgment of the legislature is entitled to "substantial deference." *Id.*

The first inquiry under Article I, Section 23 is whether the statute is reasonably related to the inherent characteristics that

---

**14.** *See United States v. Park*, 421 U.S. 658, 672–73, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975).

define the classes. This statute classifies persons into three groups: (1) those not intoxicated, (2) those voluntarily intoxicated, and (3) those involuntarily intoxicated. As for the second of these, Indiana Code section 35–41–2–5 reflects the legislative determination that defendants who are voluntarily intoxicated are responsible for their resulting actions, but recognizes that individuals who become intoxicated through no fault of their own are not to be held responsible for actions taken while intoxicated. This is a permissible legislative judgment. This distinction between voluntarily and involuntarily intoxicated defendants is rationally related to legislative goals and is a permissible balancing of the competing interests involved. The differentiation of the voluntarily intoxicated from those who lack mens rea for reasons other than self-induced drunkenness is also rational. The former voluntarily placed themselves in a mode to be harmful to others, and the latter did not.

Section 23 also requires that the preferential treatment provided by the legislation be uniformly applicable to all similarly situated persons. On its face, the voluntary intoxication statute applies to everyone. Sanchez is treated no differently from any other person who is voluntarily intoxicated when he or she commits a crime. Indiana Code section 35–41–2–5 does not violate Article I, Section 23.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

SULLIVAN, J., concurs in result with separate opinion in which RUCKER, J., concurs.

SULLIVAN, Justice, concurring in result.

This case is not about a defendant's right to avoid culpability for criminal acts on the grounds that he is drunk. Nor is this case about the legislature's ability to draft and redraft criminal statutes. What this case is about is a defendant's right to present evidence to a jury that an element of a crime has not been satisfied.

### I

Nearly seventeen years ago, this Court determined in *Terry v. State* that a criminal defendant has a constitutional right to introduce evidence of intoxication to negate an element of an offense charged by the State. 465 N.E.2d 1085, 1088 (Ind. 1984). Specifically, *Terry* held that "[a]ny factor which serves as a denial of the existence of *mens rea* must be considered by the trier of fact before a guilty finding is entered. Historically, facts such as age, mental condition, mistake or intoxication have been offered to negate the capacity to formulate intent." *Id.* *Terry* allowed a defendant to present relevant evidence to show that the State has failed to carry its burden to establish beyond a reasonable doubt that the *mens rea* requirement of a crime has been satisfied.[1] This is what Justice DeBruler meant when he stated in a later case that "[w]henever the State is required to prove a particular state of mind on the part of the defendant, evi-

1. The majority suggests that Defendant engaged in culpable conduct by consuming alcohol. *See* Majority Opinion at 517–518. However, the State has a constitutional obligation to establish every element of a charged offense, and that includes showing that Defendant engaged in his conduct intentionally or knowingly when the offense contains such a *mens rea* requirement. *See, e.g.,* Ind. Code § 35–42–4–1 (1998) (stating that rape occurs "when a person ... knowingly or intentionally has sexual intercourse with a member of the opposite sex" under certain defined circumstances).

dence of intoxication is permitted to negate the existence of that element of the crime." *Fowler v. State*, 526 N.E.2d 1181, 1182 (Ind.1988). *Cf. McClain v. State*, 678 N.E.2d 104, 106 (Ind.1997) (holding as a matter of statutory law that "evidence of automatism can be presented to show lack of criminal intent . . . ."), *reh'g denied.*

The majority opinion overrules *Terry*. I think this is wrong.

That *Terry's* holding stems from the Indiana Constitution is beyond question, despite the fact that the opinion does not cite a specific provision. First, *Terry* stated that the statute at issue there was "void and without effect" and "violative of the Constitution of the United States and the State of Indiana." 465 N.E.2d at 1087–88. *See also id.* at 1088 ("A defendant in Indiana can offer a defense of intoxication to any crime.").[2] Moreover, *Terry's* reliance on the Indiana Constitution is further sharpened by its incorporation of Justice Givan's concurring opinion in *Sills v. State*, where he stated that a defendant could present evidence of intoxication to negate an element of an offense "under *our* constitution and under the firmly established principles of the mens rea required in criminal law." 463 N.E.2d 228, 242 (Ind. 1984) (emphasis added), *majority opinion overruled in part on other grounds in Wright v. State*, 658 N.E.2d 563, 570 (Ind. 1995), *reh'g denied. Terry's* constitutional pedigree is bolstered by our treatment of it in the years since 1984. Although the majority opinion asserts that *"Terry* did not state in so many words that a statutory abolition of the defense of voluntary intoxication is prohibited by the Indiana Constitution," Majority Opinion at 513, *State v. Van Cleave* recognized *Terry's* roots in "the *Indiana* and U.S. Constitutions." 674 N.E.2d 1293, 1302 (Ind.1996)

(emphasis added), *reh'g granted on other grounds,* 681 N.E.2d 181 (1997), *cert. denied,* 522 U.S. 1119, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). Indeed, we have found the constitutional principles expounded in *Terry* to be so fundamental that we gave its rule retroactive application. *See Pavey v. State,* 498 N.E.2d 1195, 1196 (Ind.1986) (applying *Terry* retroactively because its holding "corrected a flaw which directly and persuasively affected the fact finding process and the determination of a defendant's guilt or innocence."). We have as of yet articulated no doubt about the constitutional source of the *Terry* rule. *See, e.g., Owens v. State,* 659 N.E.2d 466, 472 (Ind.1995), *reh'g denied; Fowler,* 526 N.E.2d at 1182.

Exceedingly persuasive arguments must be set out for us to turn our back on such established law. *See New York, C. & St. L. R. Co. v. Henderson,* 237 Ind. 456, 465, 146 N.E.2d 531, 537 (1957) ("We are not unmindful of the importance and the desirability of stable principles of law upon which litigants may rely, but where a rule announced in an opinion works an obvious injustice upon litigants and is not supported by any authority that we can find, it should be eliminated from the body of precedents of this jurisdiction."), *reh'g denied; Prudential Ins. Co. of America v. Smith,* 231 Ind. 403, 408, 108 N.E.2d 61, 63 (1952) ("This court is reluctant to overrule its own precedents if there is any justification in legal principles by which they can be sustained . . . ."). As Chief Justice Emmert stated in *State ex rel. Hale v. Marion County Municipal Court, Room 3:*

> Nor should this court casually overrule prior precedents if there is to be stability in the law. . . . [This] is not a case where the reasons for the rule have

---

**2.** The United States Supreme Court overruled the federal component of this holding in *Mon-* *tana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996).

ceased to exist, or there never was any reason for the rule in the first place, either of which may be good cause for overruling a prior precedent. If this court is to overrule prior precedents in order to force a result in a particular case, we will administer justice by men and not by law, and have the law declared by judges and not by courts.

234 Ind. 467, 484–85, 127 N.E.2d 897, 905 (1955) (Emmert, C.J., dissenting). *Accord Durham v. U–Haul Int'l*, 745 N.E.2d 755, 763 (Ind.2001) ("We have no quarrel with the result reached by the Court of Appeals as a matter of policy. If we were writing on a clean slate we would find the Court of Appeals' analysis persuasive.").

Under these principles, we should review *Terry* only to see if intervening circumstances have eroded its foundation to the extent that there is no "justification in legal principles by which [it] can be sustained." *Prudential*, 231 Ind. at 408, 108 N.E.2d at 63. My review of the justifications behind *Terry* indicates that its rule has several salient features that are as strong today as in 1984.

The majority would hold that the voluntary intoxication defense statute should be read as merely "defining the elements of crimes in this state." Majority Opinion at 519. This is because "a statute may properly impose criminal liability for some actions without a *mens rea*" element. *Id.* at 518. And because he reads *Terry* (and *Sills*) to suggest that a *mens rea* element is constitutionally required, the majority says, it (they) are not good law.

Even if a *mens rea* element is not constitutionally required as a matter of *substantive* constitutional law, the rule that *Terry* set out—which pertains solely to the presentation of evidence—has been vindicated by the procedural aspects of this court's and the United States Supreme Court's criminal law jurisprudence. *See* Louis D. Bilionis, *Process, the Constitution and Substantive Criminal Law*, 96 Mich. L.Rev. 1269, 1272 (1998) ("[P]rocess considerations have been shaping the Supreme Courts jurisprudence at the intersection of the Constitution and substantive criminal law for at least seventy-five years."). Constitutional criminal law is a process whereby each governmental actor plays an established role. The legislative branch is responsible for defining crimes, while courts must craft procedural rules that vindicate those legislative choices. *Id.* at 1293, 1320–21.[3] I view *Terry* as one such intersection of the Constitution and substantive criminal law that produced a procedural right. *Id.* at 1272. Therefore, while the legislature is free to define the elements of crimes, it was not free to override the rule of constitutional criminal *procedure* that *Terry* pronounced.

*Terry* is not alone in this position. Several older Indiana cases suggest that criminal defendants have a right to present evidence to rebut the States case on a *mens rea* element. For example, we stated in *Dedrick v. State* that "the Legislature has no power to declare that certain facts shall be prima facie evidence of the ultimate fact of criminal intent, where such facts, standing alone and without legislative enactment to aid them, would not be

---

**3.** The drafters of the Indiana Constitution apparently subscribed to this view. A proposed amendment to the resolution that became Article 1, § 15 provided that "[n]o person shall be held to answer to any criminal charge except in such manner as shall be prescribed by law." *Id.* at 735. The fact that this amendment failed, *see id.* at 736, suggests that the drafters did not grant the legislature an unfettered power to write rules of criminal procedure. This reading is reinforced by the concept of separation of power that the drafters embedded in Article 3, § 1.

sufficient to support a verdict." 210 Ind. 259, 278, 2 N.E.2d 409, 418 (1936) (citing *Powers v. State*, 204 Ind. 472, 184 N.E. 549 (1933)). *See also Jacobs v. State*, 210 Ind. 107, 110, 1 N.E.2d 452, 453 (1936) ("Any instruction, whether or not it is based upon a legislative enactment, which undertakes to tell the jury that certain evidence is sufficient to establish the ultimate fact of criminal intent, or any other ultimate fact, or to create a presumption of such an ultimate fact, invades the constitutional province of the jury."); *Walter v. State*, 208 Ind. 231, 237, 195 N.E. 268, 271 (1935) (holding that statute providing that "the failure, suspension, or involuntary liquidation of the bank within thirty days after the time of receiving the deposit, which is charged to have been embezzled, shall be prima facie evidence of intent to defraud" violated Article 1, § 19 of the Indiana Constitution). These cases stand for the proposition that the legislature cannot set out the elements of a crime but prevent a defendant from negating those elements through irrebuttable presumptions of fact. This is similar to what occurred in Defendant's case, as the legislature defined rape to include an element of intent but also set up a per se preclusion of the evidence that would negate that element.

Indiana is not alone in adopting a position that a defendant has a constitutional right to present evidence negating an element of *mens rea*. Several courts from other jurisdictions have found a constitutional right to present evidence to rebut the State's proof of voluntary conduct:

To find otherwise would deprive a criminal defendant of the right to defend against one of the essential elements of every criminal case. In effect, then, such a finding would deprive the defendant of the means to challenge an aspect of the prosecution's case and remove the burden of proof on that element in contravention of constitutional and statutory law.

*State v. Phipps*, 883 S.W.2d 138, 149 (Tenn.Crim.App.1994) (discussing constitutional right to present evidence of diminished capacity). *See also State v. Brown*, 122 N.M. 724, 931 P.2d 69, 77 (1996).

In fact, four members of the United States Supreme Court believe that the right to present evidence negating the element of intent is ingrained in the federal constitution. *See Montana v. Egelhoff*, 518 U.S. 37, 61, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (O'Connor, J., dissenting). Justice O'Connor based much of her dissent on what she deemed to be a "simple principle": "Due process demands that a criminal defendant be afforded a fair opportunity to defend against the State's accusations. Meaningful adversarial testing of the State's case requires that the defendant not be prevented from raising an effective defense, which must include the right to present relevant, probative evidence." *Id.* at 63, 116 S.Ct. 2013.[4] Four other justices in *Egelhoff* determined that the ability to present such exculpatory evidence was not a "fundamental principle of justice," *id.* at 43, 116 S.Ct. 2013 (opinion of Scalia, J.) and a fifth voted on other grounds to uphold the conviction. *Id.* at

---

4. It is somewhat difficult to decipher whether Justice O'Connor sees this right as substantive or procedural because she cites substantive cases such as *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), as well as procedural cases such as *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). However, I see her opinion as essentially melding both bodies of law. *Cf.* discussion *supra* page 513. It grants a procedural right—the ability to present evidence of intoxication—in order to serve substantive goals—the requirement that the State prove its case on every element beyond a reasonable doubt.

56, 116 S.Ct. 2013 (opinion of Ginsburg, J.). But the fact that Justice O'Connor's opinion also had four votes demonstrates that the thinking behind *Terry* has not faded so much that it is "a case where the reasons for the rule have ceased to exist, or there never was any reason for the rule in the first place." *Hale*, 127 N.E.2d at 905.

Finally, I note that *Terry* does not work the kind of "obvious injustice" against the State that would require its abandonment. *Henderson*, 237 Ind. at 465, 146 N.E.2d at 537. *Terry* simply affords defendants the chance to present relevant evidence.[5] It does not guarantee an acquittal, and we have repeated *Terry*'s admonition that:

> The potential of this defense should not be confused with the reality of the situation. *It is difficult to envision a finding of not guilty by reason of intoxication when the acts committed require a significant degree of physical or intellectual skills.* As a general proposition, a defendant should not be relieved of responsibility when he was able to devise a plan, operate equipment, instruct

the behavior of others or carry out acts requiring physical skill.

465 N.E.2d at 1088 (emphasis added). I agree that there are an extremely limited number of cases—as I will discuss in a moment, I do not think this is one of them—where a defendant can meet the *Terry* standard. But it is a criminal defendants constitutional right to try.[6]

Moreover, while *Terry* produces little unfairness to the State, the majority opinion produces great unfairness to defendants. The legislature has defined numerous crimes to include an element of intentional conduct. *See, e.g.,* Ind. Code § 35–42–4–1 (1998). Under the statute upheld today, a criminal defendant is denied the opportunity to present evidence that is relevant to these legislatively enacted elements. The statute precludes this evidence without any reference to its reliability and instead makes it unavailable simply to increase the likelihood of conviction of a certain class of defendants who might otherwise be able to prove that they did not satisfy a requisite element of

---

**5.** The fact that the legislature retained the defense of involuntary intoxication demonstrates that it considers evidence of intoxication relevant to the issue of intent. *See* Ind. Code § 35–41–3–5 (1998). The majority seemingly also would find evidence of intoxication to be relevant and reliable, as it would allow it to be introduced as "general background." *See* discussion *infra.* This conclusion appears to contradict Chief Justice Shepard's opinion in *Swanson v. State*, 666 N.E.2d 397 (Ind.1996), *reh'g denied.*

**6.** This case is distinct from other situations where we have upheld the exclusion of potentially exculpatory evidence. *See, e.g., Hubbard v. State*, 742 N.E.2d 919, 924 (Ind.2001) (upholding exclusion of polygraph test results). *See also Duff v. State*, 508 N.E.2d 17, 21 (Ind.1987) (DeBruler, J., dissenting) (discussing "the right of the defendant to present relevant evidence and to have a fair opportunity to cross-examine opposing witnesses"), *reh'g denied.* In those cases, we upheld the

exclusion of relevant evidence based on some flaw in its evidentiary value, such as its unreliability. Here, the defendant is prevented from presenting exculpatory evidence not because of a failure in its evidentiary value, but because of the State's desire "to ensure that even a defendant who lacked the required mental-state element—and is therefore not guilty—is nevertheless convicted of the offense." *Egelhoff*, 518 U.S. at 66, 116 S.Ct. 2013 (O'Connor, J., dissenting). *See also id.* at 67, 116 S.Ct. 2013 ("[The statute bars] the defendant's use of a category of relevant, exculpatory evidence for the express purpose of improving the State's likelihood of winning a conviction .... The plurality's observation that all evidentiary rules that exclude exculpatory evidence reduce the State's burden to prove its case is beside the point. The *purpose* of the familiar rules is not to alleviate the State's burden, but rather to vindicate some other goal or value ....") (emphasis in original).

the offense. 518 U.S. at 61, 116 S.Ct. 2013 (O'Connor, J., dissenting).[7] And, of course, the majority's opinion gives the legislature carte blanch to eliminate a defendants right to present evidence in other circumstances on the theory that it is merely defining elements. This is perhaps the most disturbing aspect of todays holding.

I agree with Justice O'Connor's statement that: "A state legislature certainly has the authority to identify the elements of the offenses it wishes to punish, but once its laws are written, a defendant has the right to insist that the State prove beyond a reasonable doubt every element of an offense. . . . ." *Id.* at 64, 116 S.Ct. 2013. This unfairness in overruling *Terry* is exacerbated by the fact that the majority opinion allows the introduction of evidence of intoxication as "general background." Majority Opinion at 519. Under this approach, *the State* would be allowed to attack the defendant with what amounts to evidence of bad character—*i.e.* that the defendant drinks to excess. However, the defendant would not be allowed to use the exact same evidence to rebut the charges against him. *Cf. Swanson*, 666 N.E.2d at 397 (disapproving the use of prior bad act evidence to show the "res gestae" of the crime).

My discussion here does not purport to show that I would feel compelled to *adopt* the rule enunciated in *Terry* if that case were before us in the first instance. There are valid reasons underlying both the majority's opinion and Justice Scalia's opinion in *Egelhoff.* However, the arguments I have set forth demonstrate that the principles underlying *Terry* remain sufficiently viable that we must *adhere* to this well-settled precedent.

## II

I concur in the result because I am convinced that the trial court's error was harmless beyond a reasonable doubt. The State proved beyond a reasonable doubt that Defendant was not so intoxicated that he was incapable of forming the intent required by the statute. "Evidence that shows a defendant was not so intoxicated so that he could indeed form the requisite mens rea includes such things as his ability 'to devise a plan, operate equipment, instruct the behavior of others, or carry out acts requiring physical skill.' " *Owens v. State*, 659 N.E.2d 466, 473 (Ind.1995) (quoting *Terry*, 465 N.E.2d at 1088). The evidence presented at trial shows that Defendant returned to a party at a trailer, held the partygoers at gunpoint and ordered them to handover all the phones inside the trailer. He then forced the victim to walk to a secluded cornfield. After repeatedly raping her, he led her to his house, which was more than three miles away. Along the way, he forced the victim to hide from passing cars and caught on when the victim attempted to trick him. Inside his home, Defendant hid the victim in the basement and told others in the house not to come downstairs. Defendant then raped the victim again. Police later found Defendant and the victim asleep in a bed. Defendant had a gun loaded and cocked near his right hand. This evidence is sufficient to show beyond a reasonable doubt that Defendant was capable of forming the intent required by the rape statute.

RUCKER, J., concurs.

---

**7.** The *Egelhoff* opinion is useful in construing Ind.Code § 35–41–2–5 because the statute was drafted in 1997, apparently in response to *Egelhoff*.