# FOR PUBLICATION



**FILED**

Aug 22 2013, 5:37 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GLEN E. KOCH, II**
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMIAH WALLS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A05-1211-CR-603 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Jane Spencer Craney, Judge
Cause No. 55D03-1207-FD-904

**August 22, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Jeremiah Walls appeals his convictions for two counts of intimidation as class D felonies,[1] resisting law enforcement as a class A misdemeanor,[2] criminal trespass as a class A misdemeanor,[3] battery as a class A misdemeanor,[4] battery as a class B misdemeanor,[5] and disorderly conduct as a Class B misdemeanor.[6] Walls raises four issues, which we revise and restate as:

I.      Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his convictions for criminal trespass and intimidation;

II.     Whether the trial court properly instructed the jury;

III.    Whether the trial court properly limited Walls's closing argument; and

IV.     Whether the voluntary intoxication statute is unconstitutional.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 1, 2012, at 5:15 am, Walls was in the common area of the Countrywide Apartments in Martinsville, Indiana. He was intoxicated and was falling down, rambling, unable to maintain consciousness, had slurred speech, and believed that he knew people whom he did not know. Walls lay in front of Kristy Zurita's apartment door and started kicking or tapping on her door with his feet. Zurita had been asleep but woke up and

---

[1] Ind. Code § 35-45-2-1.

[2] Ind. Code § 35-44.1-3-1.

[3] Ind. Code § 35-43-2-2.

[4] Ind. Code § 35-42-2-1.

[5] Ind. Code § 35-42-2-1.

[6] Ind. Code § 35-45-1-3.

2

went to the door.  After opening it, she saw Walls sleeping in the hallway.  She tried to wake him up, asked him to leave, and shut the door.  Walls instead knocked on the door, requested to come in and spend the night, and when he was refused entry, began banging on the door and yelling.  Zurita believed he was intoxicated and asked him to leave several times, and then threated to call the police if he didn't leave.  Walls yelled back "[c]all the f------ police" and remained in the hallway, yelling.  Transcript at 118.

About the same time, in another apartment, Chelsea Wainwright and Kelsie Litton were awakened by the disturbance.  When they opened their door, they saw Zurita telling Walls to leave.  Walls then started walking toward their door, told them he was drunk, and asked Wainwright if he could come in.  She refused.  Walls tried to kiss her hand and grabbed her neck.  He attempted to enter the apartment and put his foot through the threshold of the apartment.  Wainwright and Litton were able to push him out of the apartment and shut the door and locked it.  Walls then started banging on the door.

At about that time, Zurita called the police.  Officer Gary Wagner with the Martinsville Police Department responded to the call, which was for "a subject that was refusing to leave."  Id. at 251.  When he arrived, he found Walls in front of Wainwright's door.  The Officer approached Walls and attempted to have him leave but Walls refused, yelled profanity, and was "coming at him like he was going to kick him."  Id. at 125.  At that point, the Officer asked Walls to give him his hands but Walls pulled away.  The Officer then reached out for Walls's hands, and they got into a wrestling match.  Eventually, the Officer managed to get behind Walls, asked him to get on the ground, and pulled out his taser.  Walls gave the impression that he was going to comply but at

the last second, he lunged at the Officer and grabbed the taser. A bystander came to the Officer's aid and together they wrestled Walls and pinned him on the floor. Eventually, the Officer managed to handcuff Walls. In the scuffle, the Officer's arm was bruised and Walls had a bleeding nose.

Subsequently, other officers arrived. Officer Gary Wagner's son, Trent Wagner with the Morgan County Sheriff Department, arrived with the police van and transported Walls to the hospital for treatment and a blood draw. On the way to the hospital, Walls yelled profanities at Officer Trent Wagner, saying "you and your dad are going to f------ pay," and "I don't give a f--- because once you and your dad are dead and gone, you can't testify against me." Id. at 214. Additionally Walls said that he was going to have his family kill both Trent Wagner and Gary Wagner. When they arrived at the hospital, Officer Trent Wagner told his father and the other officers what Walls had been saying. Eventually medical personnel cleared Walls for incarceration and he was transported to the police station for booking.

On July 2, 2012, the State charged Walls with: Counts I-IV, intimidation as class D felonies; Count V, resisting law enforcement as a class A misdemeanor; Count VI, criminal trespass as a class A misdemeanor; Count VII, battery as a class A misdemeanor; Count VIII, battery as a class B misdemeanor; and Count IX, disorderly conduct as a class B misdemeanor.

On October 17, 2012, a jury trial was held and the jury found Walls not guilty of Counts I and III, intimidation, but guilty on all remaining Counts. On October 31, 2012, the trial court merged Counts VII and IX into Count V, and sentenced Walls to three

years on Count II, three years on Count IV, one year on each of Counts V, VI and VIII, all concurrent, for an aggregate sentence of three years.

Walls now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Sufficiency of the Evidence

Walls contends that the evidence is insufficient to support his conviction for criminal trespass and intimidation. When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-906 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

A. Criminal Trespass

Walls argues that the State failed to prove beyond a reasonable doubt that he committed criminal trespass. Pursuant to Ind. Code § 35-43-2-2(a), a person who "not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent . . . commits criminal trespass, a Class A misdemeanor."

Walls points to Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc., 820 N.E.2d 158 (Ind. Ct. App. 2005), reh'g denied, trans. denied, and essentially argues that

only Countrywide Apartments or its agent, and not Zurita and Wainwright or other tenants, could ask Walls to leave the common areas of the apartment complex under any condition. In Aberdeen, the court discussed whether a landlord retained a possessory interest in the common areas of an apartment complex for the purposes of asking a person to leave those areas as contemplated by the criminal trespass statute. 820 N.E.2d at 165. The court held that the landlord retained exclusive possession of the common areas and that landlords have "a sufficient possessory interest in the common areas of their properties to maintain an action for trespass to those areas." Id. at 167. While the holding of Aberdeen related to whether the landlord was able to maintain a trespass action, the court also stated that it found compelling the notion that tenants have a license to use common areas and as such are invitees of the landlord when in the common areas.[7] Id. at 165. We need not resolve the precise nature of tenants' rights to or status when in the common areas of an apartment complex in this case. We need address only whether Zurita and Wainwright had a sufficient interest in their leased apartment units to support their requests for Walls to leave the areas immediately outside their doors.

We observe that Walls was not merely present in the common areas of Countrywide Apartments. While intoxicated, he was in the common areas at 5:15 a.m. in front of Zurita's apartment door, awakening her by kicking or tapping on her door with his feet. He refused to leave when requested to do so, and instead knocked on the door, requested to come in, and when refused entry, began banging on the door and yelling. Walls then approached Wainwright's and Litton's apartment and asked Wainwright if he

---

[7] In a separate opinion in Aberdeen, Judge Baker dissented from the majority's criminal trespass analysis and, specifically, the statements that tenants have only a license to the common areas and are invitees of the landlord while in the common areas. 820 N.E.2d at 170-171.

6

could enter the apartment. After being refused entry, he attempted to come in and put his foot through the threshold of the apartment. Wainwright and Litton were able to push him out of the apartment and shut the door and locked it, and Walls persisted in banging on their apartment door. Thus, Walls was not merely present in the common areas but also was positioned immediately outside the doors giving access to the leased apartment units, persistently banging on the doors to the units, and in Wainwright and Litton's case, had his foot through the threshold of the door.

Under the circumstances of this case, the tenants, while not in exclusive control of the common areas, had a sufficient possessory interest in, at a minimum, their apartment doors, the threshold of their apartments, and the immediate adjacent areas by which they accessed their leased apartment units, to request that a person leave that specific area and stop persistently banging on their doors. A rigid rule, applied without exception, that a tenant does not have a sufficient possessory interest in such property would defy logic and lead to an absurd result.

Thus, a tenant's possessory interest in a rental unit for the purpose of supporting a criminal trespass action may, under circumstances such as these, extend to an interest in the passageways for ingress and egress to and from the rental unit, to the area in the threshold of the unit, and to the door of the unit. See Columbus v. Parks, 10th Dist. Franklin No. 10AP-574, 2011-Ohio-2164, slip op. at 4 (Ohio Ct. App. 2011) (noting that a landlord gives up his possessory interest in the rental unit and that similarly "the landlord's rights in limiting common ingress and egress ways to guests of the tenant must also be generally qualified so as to permit access to the renter's apartment") (citation

7

omitted); <u>Com. v. Nelson</u>, 909 N.E.2d 42, 46 (Mass. App. Ct. 2009) (stating that a residential tenancy carries with it a limited easement through the common areas for purposes of permitting a tenant's invited guests access and egress from the apartment and that there is "a defense to a charge of criminal trespass only for those defendants who are in the common areas of an apartment building at the invitation of a tenant and within the scope of that invitation").

There was sufficient evidence to support the trespass conviction and we therefore affirm Walls's conviction for criminal trespass as a class A misdemeanor.

## B. Intimidation of Officer Gary Wagner

Walls also contends that the State failed to provide sufficient evidence that he intimidated Officer Gary Wagner. Walls communicated to Officer Trent Wagner that Walls's family was going to kill him and his father, Officer Gary Wagner. Officer Trent Wagner subsequently reported to his father what Walls had said. Walls claims that the State failed to prove that he did in fact threaten Officer Gary Wagner because he did not directly communicate his threats to Officer Gary Wagner.

To prove an intimidation, the State must establish beyond a reasonable doubt that Walls threatened Officer Gary Wagner and with the intent that he be placed in fear of retaliation for a prior lawful act. <u>See</u> Ind. Code § 35-45-2-1(a)(2). In <u>Ajabu v. State</u>, Ajabu conveyed threats through the media that "if somebody kills [Ajabu's son] for something he did not do, then that'll make me take somebody's life" and that "I didn't make the rules. [The prosecutor] made the rules. I'm just playing the game. . . . I'm saying that if he [Ajabu's son] is killed for something that he did not do, then I'm going

8

to respond in kind." 677 N.E.2d 1035, 1038 (Ind. Ct. App. 1997), <u>trans. denied</u>. Ajabu conveyed threats through the media toward the mother of murder victims by stating "she [] has reaped the benefit of the death, rape and pillaging of our people and our continent. Is she eligible for the death penalty?" <u>Id.</u> at 1037. Ajabu was convicted for two counts of intimidation. <u>Id.</u> at 1038.

On appeal, Ajabu argued that as a matter of law the statements he made through the media were not communicated to another person in the manner required by the intimidation statute in part because the prosecutor was not present when he made the statements and that, under the statute, a threat must be communicated directly to the victim. <u>Id.</u> at 1042. The court noted that "[t]he text of the intimidation statute does not limit the phrase 'communicates a threat to another person' to only those threats made directly to or in the presence of the threatened party," that "[t]he word 'communicate' encompasses those threats made known or transmitted to another person," and that "the statute does not limit the means utilized to convey the threat." <u>Id.</u> The court also noted that "Ajabu's contention that he did not threaten to harm [the prosecutor and the mother of the victims] is not well taken because the intimidation statute applies whether the threat is made to unlawfully injure the person threatened or another person." <u>Id.</u>

Here there was sufficient evidence to establish that Walls intimidated Officer Gary Wagner. Walls communicated his threat to Officer Trent Wagner, who in turn informed his father. The evidence further supports the conclusion that Walls intended that Officer Gary Wagner be placed in fear of retaliation for a prior lawful act. We therefore affirm Walls's conviction for intimidation.

9

## II. Jury Instructions

Next, Walls argues that the trial court improperly instructed the jury by failing to include whether the offenses in the instructions were felonies or misdemeanors. Jury instructions lie within the sole discretion of the trial court. Carter v. State, 766 N.E.2d 377, 382 (Ind. 2002), reh'g denied. We will reverse only when the instructions amount to an abuse of discretion. Whitney v. State, 750 N.E.2d 342, 344 (Ind. 2001). Jury instructions are to be considered as a whole and in reference to each other, and we will not reverse the trial court's decision as an abuse of discretion unless the instructions as a whole mislead the jury as to the law of the case. Carter, 766 N.E.2d at 382.

It is Walls's allegation that the jury was not properly instructed by Instruction Number 4 because it should have indicated whether the offense of intimidation was a misdemeanor or a felony. The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001). In reviewing a trial court's decision to give or refuse a tendered jury instruction, we consider whether the instruction correctly states the law, is supported by the evidence in the record, and is covered in substance by other instructions. Whitney, 750 N.E.2d at 344.

We conclude that the trial court correctly set out the law. A jury decides cases based on the evidence presented to it during trial and it determines guilt and innocence of an accused person. See Brown v. State, 799 N.E.2d 1064, 1067. "The jury's role is to determine guilt and innocence" and "not to act as a legislature for a single event by

10

prescribing the penalties the jury deems appropriate for the defendant appearing before them." Id. We cannot say that the trial court abused its discretion in instructing the jury.

### III. Closing Argument

In a related argument, Walls claims that the trial court abused its discretion by not allowing him to address the levels of offenses in his closing argument. The proper scope of closing argument is within the trial court's sound discretion. Taylor v. State, 457 N.E.2d 594, 599 (Ind. Ct. App. 1983). We will not find that the trial court abused its discretion unless its decision is clearly against the logic and effect of the facts and circumstances before it. Id. In seeking reversal of a conviction, it is incumbent upon the appellant to establish not only the trial court's abuse of discretion but also any resulting prejudice to his or her rights. Id.

As we stated above, the jury's role is to determine guilt and innocence. Brown, 799 N.E.2d at 1067. A jury is not meant to act as a legislature for a single event by prescribing the penalties the jury deems appropriate for the defendant appearing before them. Id. Moreover, even if the court abused its discretion when it did not permit Walls to address the level of offenses in his closing argument, Walls failed to show how he was prejudiced by the alleged error. Therefore, we conclude that the trial court did not abuse its discretion by limiting Walls's closing argument.

### IV. Unconstitutionality

Finally, Walls contends that the voluntary intoxication statute materially burdens his constitutional right of selecting what to eat or drink and thus impermissibly infringes on his rights under Article I, Section I of the Indiana Constitution.

11

In Sanchez v. State, 749 N.E.2d 509, 517 (Ind. 2001), the Indiana Supreme Court held that "[t]he Indiana intoxication statute eliminates the requirement that the voluntarily intoxicated defendant acted 'knowingly' or 'intentionally' as to those crimes that include those elements." Id. (footnote omitted). The Court further held: "But even if there may be an act rendered involuntary by intoxication, itself a doubtful premise in most circumstances, the legislature has decreed that the intoxication, if voluntary, supplies the general requirement of a voluntary act. That is sufficient to place the voluntarily intoxicated offender at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." Id.

Relying on Sanchez, Walls asserts that:

Because imbibing intoxicated drinks is a core constitutional value, the voluntary intoxication statute cannot stand with respect to Walls if it creates a material burden on [] his liberty to decide what he drinks.

* * * * *

By providing that imbibing intoxicated beverages can satisfy the intent element of all crimes, the legislature has, in effect, criminalized constitutionally protected conduct. At the very least, it has attached "more serious penal consequences to an activity that the legislature may view as reprehensible in itself if it produces greater harm than it typically does."

Appellant's Brief at 22-23 (citing Sanchez, 749 N.E.2d at 517-518).

First, the intention of the legislature was not to bar intoxication as reprehensible, but only to penalize the conduct that "produces greater harm than it typically does." See Sanchez, 749 N.E.2d at 518. Thus, the voluntary intoxication statute is triggered only given a state of intoxication that produces more harm than usual. Second, no part of that

12

statute introduces an outright ban that a person cannot drink alcohol. "The purpose of the [public intoxication statute] is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition." Jones v. State, 881 N.E.2d 1095, 1098 (Ind. Ct. App. 2008).

Therefore, we conclude that the voluntary intoxication statute does not impose a substantial obstacle to drinking intoxicating beverages. Walls had the right to drink intoxicating beverages. The police got involved only after Walls's state of intoxication and his conduct produced more harm than would be usual to the tenants of Countryview Apartments. Therefore, we fail to see how his constitutional right to drink alcoholic beverages was infringed. We find the voluntary intoxication statute to be constitutional.

CONCLUSION

For the foregoing reasons, we conclude that: (1) the State provided sufficient evidence to establish that Walls committed criminal trespass; (2) the State provided sufficient evidence to establish that Walls intimidated Officer Gary Wagner; (3) the trial court did not abuse its discretion in instructing the jury; (4) the trial court did not abuse its discretion when it disallowed Walls to address the levels of offenses in his closing argument; and (5) the voluntary intoxication statute is not unconstitutional.

Affirmed.

BRADFORD, J., concurs.

RILEY, J., dissents in part and concurs in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JEREMIAH WALLS,                          )
                                         )
    Appellant-Defendant,             )
                                         )
        vs.                       )     No. 55A05-1211-CR-603
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

**RILEY, J. dissenting in part and concurring in part**

While I concur with the majority in that (1) there was sufficient evidence to find Walls intimidated Officer Wagner; (2) the trial court properly instructed the jury; (3) the trial court did not abuse its discretion by limiting Walls' closing argument; and (4) the voluntary intoxication statute was constitutional, I respectfully dissent with the majority's decision to affirm Walls' conviction and sentence for criminal trespass.

The majority veered off from our holding in *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.* 820 N.E.2d 158, 164 (Ind. Ct. App. 2010), and instead relied upon out-of-state case law. Our court has already established case law on this issue, and though it may seem "absurd", this court has strictly interpreted the criminal trespass statute which requires that entry on property be denied by either the owner or its agent. *See* I.C. § 35–43–2–2(a)(1); *Slip Op. p. 7*. This court held in *Aberdeen* that a

landlord held a possessory interest in the common areas. In distinguishing the interest of the tenant and the landlord, we stated that a landlord "has a sufficient possessory interest in the common areas of an apartment complex to bring an action for trespass whereas tenants retain a mere license to the common areas." *Id*. at 165.

In this regard, we noted that only the landlord can exclude a trespasser from the common areas:

> [t]he landlord grants to tenants' rights of exclusive possession to designated portions of the property, but the landlord retains exclusive possession of the common areas. The landlord grants to tenants a license to use the common areas of the property. Tenants pay for this license as part of their rent. Therefore, tenants are invitees of the landlord while in the common areas, because the landlord has received a pecuniary benefit for licensing their presence.

*Id.* (*citing Stanley v. Town Square Coop.,* 203 Mich. App. 143, 512 N.W.2d 51, 54 (1994)). Moreover, we followed *Aberdeen* in *Glispie v. State* 955 N.E.2d 819 (Ind. Ct. App. 2011). In that case, we considered whether a police officer who was neither an owner of the property or an agent of the owner could ask the defendant to leave the property. This court held that "[t]he State failed to show the elements necessary for an agency relationship. As such, the State failed to prove an essential element of criminal trespass, namely, that the owner or its agent had denied Glispie entry into the owner's property." *Id.* at 823.

By relying on out-of-state case law, the majority conclude that under the circumstances of this case, tenants have a sufficient possessory interest in immediate adjacent areas to their apartment for purposes of the criminal trespass statute. I find that this result leaves the fact finder in the unenviable position to determine how "adjacent" and "immediate" an area should be for a tenant to be able to request a person to leave.

*See Slip Op. p. 7.* Pursuant to *Aberdeen*, I, however, find that as tenants of Countryview Apartments, Zurita and Wainwright only had exclusive possession of the apartments they leased and not of the common areas. They could therefore not ask Walls to leave the common areas of the apartment.

In light of the foregoing, I disagree with the majority's finding and I conclude that the State failed to prove the essential element of the crime. I would therefore reverse Walls' conviction for criminal trespass.