# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 10 2016, 8:20 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

---

## IN THE
## COURT OF APPEALS OF INDIANA

---

Gilberto Jimenez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 10, 2016

Court of Appeals Case No.
49A02-1506-CR-536

Appeal from the
Marion Superior Court

The Honorable Dylan A. Vigh,
Judge Pro Tempore

Trial Court Cause No.
49F09-1403-CM-11153

**Kirsch, Judge.**

[1] Following a bench trial, Gilberto Jimenez ("Jimenez") was convicted of Class A misdemeanor resisting law enforcement.[1] He appeals, asserting that the evidence was insufficient to convict him because, when he struggled with a police officer, he mistakenly believed that the police officer was a thief attacking his son.

[2] We affirm.

## Facts and Procedural History

[3] Around 10:00 p.m. on the night of March 4, 2014, Indianapolis Metropolitan Police Department ("IMPD") received a report of a hit and run accident in which a pedestrian had been struck by a green Ford. IMPD Officer Joe Kellar was dispatched to the area to search for the vehicle. While patrolling an apartment complex, Officer Kellar located a vehicle that matched the description and license plate of the Ford involved in the accident. As Officer Kellar approached the green Ford in his marked patrol car, a man, later identified as Yeckzee Jimenez ("Yeckzee"),[2] who is Jimenez's son, exited the car. Officer Kellar parked his patrol car, got out, and walked toward the green Ford. At that time, Yeckzee emerged from the shadow of a nearby apartment building and started to walk toward the Ford. Officer Kellar, who was in "full

---

[1] *See* Ind. Code § 35-44.1-3-1(a)(1). We note that this statute was amended effective July 1, 2014; however, Jimenez committed his offense in March 2014, and we will apply the statute in effect at that time.

[2] We note that the Transcript spells his name both as "Yeckzze" and "Yeckzee." *Tr.* at 27, 29, 37. Jimenez's brief uses the latter spelling, Yeckzee, *Appellant's Br.* at 3-4, and we will do the same.

police uniform," asked to speak with Yeckzee, but he looked at Officer Kellar and ran away. *Tr.* at 21. When Officer Kellar ordered Yeckzee to stop, he did not, and he ran to the door of a nearby townhome. Officer Kellar chased Yeckzee a short distance and advised IMPD dispatch of the situation.

[4] When Yeckzee arrived at the townhome, he began to open the front door, but Officer Kellar caught up to Yeckzee before he entered the home and grabbed Yeckzee by the jacket in order to detain him. Yeckzee wrestled with Officer Kellar, punching him in the chest and pulling away. Yeckzee was able to get the door open and tried to get inside the residence. As Officer Kellar was fighting with Yeckzee and attempting to place him in handcuffs, an individual who had been inside the residence, later identified as Jimenez, came out and "came toward" Officer Kellar. *Id.* at 23. Jimenez pushed Officer Kellar backward, punched him in the chest, and attempted to pull Yeckzee inside the home and away from Officer Kellar's grasp. Jimenez was "angry" and was yelling at Officer Kellar. *Id.* at 24. Yeckzee was attempting to slip out of his jacket in order to escape Officer Kellar's grasp and get into the residence. At some point in the struggle, Officer Michael Kavanaugh arrived, grabbed Yeckzee, and wrestled him to the ground. Both Yeckzee and Jimenez were placed in handcuffs.

[5] The State charged Jimenez with Class A battery on a police officer and Class A misdemeanor resisting law enforcement. At the bench trial, Officer Kellar testified that the struggle with Yeckzee and Jimenez lasted sixty to ninety seconds, until back-up assistance arrived. Officer Kellar described that Jimenez

was pushing him in a "violent" manner and was "slamming the door into me." *Id*. at 32-33. Officer Kellar testified that he verbally identified himself as "police" and yelled at Jimenez to stop and "get back," but Jimenez continued to attempt to push Officer Kellar away and pull Yeckzee inside the residence. *Id*. at 25. Because Officer Kellar noticed that Jimenez was yelling in Spanish, Officer Kellar yelled, "policia" two to three times. *Id*. at 25, 34. Officer Kellar described the "full uniform" that he was wearing that night as including a baseball hat with an IMPD badge on the front of it, cargo pants, and long sleeves. *Id*. at 30. The uniform included a police badge and IMPD markings. Officer Kellar described that it stated "Indianapolis Metro Police" in "very large" letters. *Id*. at 34. Officer Kellar was also wearing his police belt with all the usual police equipment and tools on it.

[6] Jimenez testified that on the night in question, around 9:00 or 9:30 p.m., he was preparing dinner in the kitchen of the apartment where he lived with his son, Yeckzee. Jimenez stated that, around that time period, he had seen his son go into his bedroom, come back out, and leave the apartment, but Yeckzee came back after a few minutes, and Jimenez told him that he was making dinner. Three or four minutes later, Jimenez "heard a struggle like a noise in the door." *Id*. at 38. Jimenez looked out a window to see what was happening, and he saw someone wearing a black jacket grabbing Yeckzee's jacket, and they were struggling. Jimenez testified that he saw his son trying to close the front door, and Jimenez believed that "someone was mugging my son." *Id*. at 40. Having been a victim of theft before, Jimenez "was so scared" that it was happening

again.  *Id*.  Jimenez said he reached out of the door, that was open about one foot, and tried to intervene and help his son, but he denied striking the individual, who was Officer Kellar, stating that he only tried to separate the hand that was grabbing his son's jacket.  Jimenez explained that he did not see the police uniform, as the person was "hunched over," and "[t]he only thing I could see was the hand" and a black jacket.  *Id*. at 41, 43.  Jimenez testified that the light in the inside corridor and living room was turned off, and that the only inside light that was on was in the kitchen.  He said that as soon as he heard the word "police" he immediately "moved away[.]"  *Id*. at 42.  He said another officer arrived at the scene, and he allowed both of them into the apartment.

[7]     The State called Officer Kellar as a rebuttal witness, and he testified to the lighting on the doorstep where the altercation took place.  He said that it was a single "household" bulb "attached to the outer wall beside the door" that illuminated the immediate area around the door entrance.  *Id*. at 44.  Officer Kellar described that it was sufficient for him to "get a good look at" Yeckzee and Jimenez.  *Id*. at 45.  Officer Kellar did not remember if he was wearing a jacket that night, but stated that, if he was, as Jimenez recalled seeing, it has a badge on it and IMPD patches on the shoulders.  Officer Kellar testified that, contrary to Jimenez's testimony, Jimenez did not stop struggling as soon as Officer Kellar said "policia," recalling that he had to yell it multiple times.  *Id*. at 46.  Officer Kellar acknowledged that his police car was not visible from the apartment doorstep.

[8] The trial court took the matter under advisement, ultimately finding Jimenez guilty of resisting law enforcement.[3] Jimenez now appeals.

## Discussion and Decision

[9] In reviewing a challenge to the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of the witnesses. *Johnson v. State*, 833 N.E.2d 516, 517 (Ind. Ct. App. 2005). We consider only the evidence that supports the conviction and any reasonable inferences supporting the conviction. *Jordan v. State*, 37 N.E.3d 525, 530 (Ind. Ct. App. 2015). We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* (quotations omitted). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.*

[10] Indiana Code section 35-44-3-3(a) states, "A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer . . . commits resisting law enforcement, a Class A misdemeanor." Thus, to convict Jimenez of resisting law enforcement as a Class A misdemeanor, the State needed to prove that he knowingly or intentionally forcibly resisted, obstructed, or interfered with

---

[3] The trial court sentenced Jimenez to one year in the county jail, all of which was suspended except for credit for time served, and ordered no probation but required Jimenez to perform thirty-two hours of community service.

Officer Kellar while he was lawfully engaged in the execution of his duties. Our Supreme Court has held that "the word 'forcibly' is an essential element of the crime and modifies the entire string of verbs – resists, obstructs, or interferes – such that the State must show forcible resistance, forcible obstruction, or forcible interference." *Jordan*, 37 N.E.3d at 534 (citing *Spangler v. State,* 607 N.E.2d 720, 722-23 (Ind. 1993)). Any action to resist must be done with force in order to violate the statute. *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013). "But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence." *Id*.

[11] Here, Officer Kellar located a vehicle that matched the description and license plate of the one that was involved in the hit and run accident, where a vehicle was reported as having hit an individual as well as several parked cars. Officer Kellar saw a man, Yeckzee, exit the subject car and then shortly thereafter return to it, and when Officer Kellar attempted to speak to Yeckzee, he ran. Officer Kellar grabbed Yeckzee at the door to the townhome to stop him from entering the residence. As Officer Kellar was "fighting and attempting to get [Yeckzee] in custody," Jimenez came out or reached out of the home and injected himself into the physical altercation. *Tr*. at 24. Jimenez physically pushed Officer Keller back, punched him in the chest, and shoved the door into him; Officer Kellar described that Jimenez was trying to push Officer Kellar away so that he could pull Yeckzee inside the home. During this time, Jimenez was angry and was yelling in Spanish at Officer Kellar. Jimenez claims that he

did not push Officer Keller and testified that he only tried to remove Officer Kellar's grasp on his son's jacket. It is for the trial court to resolve conflicting evidence. *Jordan*, 37 N.E.3d at 530 (appellate court does not assess witness credibility). Jimenez's conviction reflects that the trial court believed Officer Kellar's testimony that Jimenez applied force in attempting to shove Officer Kellar away from Yeckzee, a suspect, and Officer Kellar had to exert force to counteract this resistance. From the record before us, we find that the State presented sufficient evidence that Jimenez forcibly interfered with Officer Kellar's lawful execution of his duties.

[12] Jimenez maintains that the evidence was not sufficient to convict him because he mistakenly thought that Officer Kellar was a stranger who was attempting to mug his son, and, therefore, due to a mistake of fact, any interference was not knowing. Indiana Code section 35-41-3-7 provides: "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." When the State has made a *prima facie* case of guilt, the burden shifts to the defendant to establish an evidentiary predicate for the defendant's alleged mistake of fact. *Chavers v. State*, 991 N.E.2d 148, 151 (Ind. Ct. App. 2013), *trans. denied*. The defendant must show three things to establish his defense of mistake of fact: (1) the mistake was honest and reasonable; (2) the mistake was about a matter of fact; and (3) the mistake negates the culpability for the crime. Ind. Code § 35-41-3-7; *Johnson v. State*, 38 N.E.3d 686, 692 (Ind. Ct. App. 2015). The State retains the ultimate burden of proving beyond a

reasonable doubt every element of the charged crime, including culpability or intent. *Johnson*, 38 N.E.3d at 692. The State may meet this burden with respect to the mistake of fact defense in several ways, including (1) directly rebutting the defendant's evidence, (2) affirmatively showing that the defendant made no such mistake, or (3) relying upon evidence from its case-in-chief. *Id.*

[13] Here, in explaining why he did not see the police markings on the person's clothing, Jimenez testified that the door was only open about a foot and that all he could see was a hand and dark jacket. He did not testify about exterior lighting, but said that the only light on in the home was one in the kitchen. Officer Kellar, however, testified that the lighting on the doorstep of the home was adequate for him to "get a good look at" both Yeckzee and Jimenez. *Tr.* at 45. From this evidence, the trier of fact could infer that the lighting in the area was sufficient for Jimenez to see Officer Kellar, who was wearing a "full police uniform," which included a police badge, IMPD markings on the hat, a police belt with the usual law enforcement tools, and large "Indianapolis Metro Police" lettering on the jacket, as well as shoulder patches, if he was wearing a jacket, as Jimenez testified that he was. *Id.* at 21, 34. Officer Kellar also testified that he yelled "police" and "policia" multiple times, and Jimenez did not immediately stop. *Id.* at 25, 34. We find that Officer Kellar's testimony was sufficient to rebut Jimenez's defense of mistake of fact, and his assertion on appeal that he did not know or recognize that Officer Kellar was a police officer is a request for us to reweigh the evidence, which we cannot do. *Johnson*, 38 N.E.3d at 693. Considering the evidence favorable to the conviction, and in

deference to the trial court's assessment of witness credibility, we conclude that the evidence was sufficient to support Jimenez's conviction for Class A misdemeanor resisting law enforcement.

Affirmed.

Mathias, J., and Brown, J., concur.