# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 19 2018, 9:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Rory Gallagher
Victoria L. Bailey
Marion County Public Defender –
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny Sherrod, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | October 19, 2018 <br><br> Court of Appeals Case No. 18A-CR-434 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David M. Hooper, Magistrate <br><br> Trial Court Cause No. 49G12-1710-CM-40830 |

**Mathias, Judge.**

[1] Following a bench trial in Marion Superior Court, Danny Sherrod ("Sherrod") was convicted of Class A misdemeanor criminal trespass and Class B

misdemeanor disorderly conduct. Sherrod appeals and argues that the State failed to present sufficient evidence to support his conviction for criminal trespass.

[2] We affirm.

## Facts and Procedural History

[3] On the night of October 21 and early morning hours of October 22, 2017, Sherrod went to the Hideaway Nightclub in downtown Indianapolis. Working at the club that night as a bouncer was Austin Larimore ("Larimore").[1] At approximately 1:00 a.m., Larimore received a radio call regarding a disturbance near the bar. He also saw rapid movement of people at the bar. He and other bouncers quickly went to the bar to assess the situation. When he arrived, Larimore saw Sherrod with his "hands on a young lady" in an unfriendly manner. Tr. p. 7. Larimore immediately attempted to separate Sherrod from the woman and, after a brief struggle, was eventually able to separate them.

[4] Because Sherrod had made physical contact with another patron, Larimore informed him that he had to leave.[2] Larimore escorted Sherrod from the club.

---

[1] The State refers to Larimore as "Officer Larimore," and he his occasionally referred to as such in the transcript. However, the transcript does not explicitly state that Larimore was a police officer. Instead, he testified that he worked as a bouncer and occasional promoter at the Hideaway.

[2] The woman Sherrod grabbed was also escorted from the club.

Sherrod was angry and resisted "a little," but Larimore was ultimately able to get Sherrod out of the club. *Id.* at p. 8.

[5] Outside the club, Larimore again told Sherrod that he had to leave and could not return. Sherrod was loud, angry, and boisterous, and argued with Larimore and the doorman to let him back in. They refused and again told Sherrod to leave. Sherrod stated that he needed to stay there and wait for another patron, his cousin. Larimore explained to Sherrod that this was not an option and that he needed to leave the premises. Sherrod angrily made it known that he had no intention of leaving. Larimore warned Sherrod that if he did not leave, he would go to jail.

[6] Indianapolis Metropolitan Police Department ("IMPD") Officer Michelle Garcia ("Officer Garcia") was in uniform, off duty, and working as additional security for the Hideaway nightclub. She was parked in her patrol car outside the club. She saw Larimore kick Sherrod out of the club and heard Larimore tell Sherrod to leave and not come back. Sherrod briefly walked away, but then returned and attempted to reenter the club as people were exiting. Although he did not actually make it into the club, "[h]is feet were right in front of the door where people were trying to exit the nightclub." *Id.* at p. 23.

[7] Officer Garcia confronted Sherrod and told him he needed to leave the property. Sherrod "became aggressive" with Officer Garcia and called her a "bitch." *Id.* at p. 19. Officer Garcia could tell that Sherrod was intoxicated, as he smelled strongly of alcohol. Sherrod also postured himself in such a manner

that Officer Garcia thought Sherrod might fight her. Officer Garcia repeatedly told Sherrod to be quiet and leave, to no avail. Officer Garcia then placed Sherrod in handcuffs and removed him from the property.

[8] On October 22, 2017, the State charged Sherrod with Class A misdemeanor criminal trespass and Class B misdemeanor disorderly conduct. A bench trial was held on February 14, 2018. The trial court found Sherrod guilty as charged. The trial court then sentenced Sherrod to 363 days, all suspended, on the Class A misdemeanor conviction and a concurrent term of 178 days, all suspended, on the Class B misdemeanor conviction. The trial court ordered Sherrod to serve twenty-four hours of community service. Sherrod now appeals.

# Discussion and Decision

[9] On appeal, Sherrod argues that the State presented insufficient evidence to support his conviction for criminal trespass.[3] Our standard of review on claims of insufficient evidence is well settled but bears repeating:

> When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. We consider only the probative evidence supporting the [judgment] and any reasonable inferences which may be drawn from this evidence. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a

---

[3] Sherrod does not challenge the sufficiency of the evidence to support his conviction for disorderly conduct.

> reasonable trier of fact to find the defendant guilty beyond a
> reasonable doubt.

*Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied* (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)).

[10] To convict Sherrod of Class A misdemeanor criminal trespass, the State was required to prove that Sherrod, not having a contractual interest in the property, knowingly or intentionally refused to leave the real property of another person, i.e., the Hideaway Nightclub, after having been asked to leave by the Hideaway Nightclub or its agent. *See* Appellant's App. p. 16; Ind. Code § 35-43-2-2(b)(2).

[11] Sherrod argues that the evidence presented by the State is insufficient to support his conviction because, he claims:

> Sherrod was no longer on the property of Hideaway Nightclub
> after he complied with the bouncer's request to leave the
> building. After the bouncer escorted him out, Sherrod remained
> on the sidewalk in front of the building. He made several requests
> to be allowed back inside. The record is clear, however, that his
> feet never crossed the threshold of the entrance.

Appellant's Br. at 7. He further contends that there was no evidence that the sidewalk outside of the nightclub belonged to the nightclub.

[12] In support of his argument, Sherrod relies on our opinion in *Powell v. State*, 45 N.E.3d 480 (Ind. Ct. App. 2015), the facts of which are somewhat similar to the present case. In *Powell*, the defendant was asked to leave a downtown Indianapolis bar by a bouncer, who escorted him outside of the bar. An off-duty

IMPD officer, who was working as security for the bar, told Powell that he had to leave. Powell told the officer that he did not want to leave and announced his intention to go back inside. The officer informed Powell that, if he did not leave, he would be arrested for trespassing. Powell began to scream at the officer and other people outside the bar, so the officer moved him "from [the bar]'s side of the sidewalk over to—over across the street to the other sidewalk to get him away from people." *Id*. at 481 (transcript citation omitted). Powell was then arrested and subsequently convicted of criminal trespass.

[13] On appeal, Powell challenged the sufficiency of the evidence to support his conviction. A panel of this court held that, based on the limited testimony of the officer, "there [wa]s no specific information as to where Powell was standing when the officer ordered him to leave." *Id*. The court therefore held that "the State failed to prove that Powell refused to leave the bar's real property after [the arresting officer] told him to do so," and we therefore held that there was insufficient evidence to support Powell's conviction. *Id*. at 481–82.

[14] Sherrod claims that his case is on all fours with *Powell*. We disagree. In *Powell*, there was no evidence regarding where the defendant was standing when he was ordered to leave. In contrast, here, Sherrod was in the nightclub when he was first, and repeatedly, told to leave. Larimore testified that Sherrod somewhat resisted his efforts to remove Sherrod from the club. This alone would support Sherrod's conviction, as it indicates that Sherrod was not compliant with the order to leave. Moreover, Officer Garcia testified that Sherrod was standing immediately in front of an entrance to the club when she

ordered him to leave. Sherrod nevertheless argues that there was no evidence that the nightclub owned the property where he was standing, i.e., the sidewalk area immediately outside the entrance to the club.

[15] We agree with the State that the facts of the present case are more aligned with those in *Walls v. State*, 993 N.E.2d 262 (Ind. Ct. App. 2013), *trans. denied*. In *Walls*, the intoxicated defendant awakened a resident of an apartment complex by kicking on her front door early in the morning and asking to be let in. When the tenant refused, Walls continued to bang on her door and yell. He then did the same to another apartment, whose occupants also opened the door and refused Walls entry. Walls then attempted to put his foot through the threshold of that apartment, but the tenants pushed him out, shut the door, and locked it. Walls was subsequently convicted of criminal trespass.

[16] On appeal, Walls argued that only the owner of the apartment complex or its agent could ask him to leave the common area of the complex. A panel of this court held that the tenants of the apartment complex had a sufficient possessory interest in "at a minimum, their apartment doors, the threshold of their apartments, and the immediate adjacent areas by which they accessed their leased apartment units" that would permit a criminal trespass conviction of someone who refuses to leave those specific areas after being asked to do so. *Id.* at 267; *see also Johnson v. State*, 38 N.E.3d 686, 693 (Ind. Ct. App. 2015) (holding that there was sufficient evidence to support defendant's conviction for criminal trespass where defendant traversed the area between the front door of the apartment building in which the victim's apartment was located, walked up the

stairs and across the landing on her floor, and stood in the threshold of the door to her apartment such that the door could not be shut).

[17] In distinguishing *Walls*, the *Powell* court noted that, in the case before it, there was no indication that "Powell attempted to re-enter the bar or put his foot across the threshold." 45 N.E.3d at 482. In contrast, here, there was evidence that Sherrod attempted to re-enter the bar and was just outside the entry door when ordered to leave. Even if Sherrod did not actually cross the threshold, we believe that the nightclub had a sufficient possessory interest in the area immediately outside its door to permit its owners and agents to ask someone to leave under threat of criminal trespass.

[18] Indeed, the right to exclude others is one of the key rights in the "bundle" of rights that are inherent to the very concept of property ownership. *See Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111, 1113 (Ind. 2010) ("One of the time-honored principles of property law is the absolute and unconditional right of private property owners to exclude from their domain those entering without permission.") (citing William Blackstone, *Commentaries on the Laws of England* 2 (1766)); *see also* id. at 1112 ("An owner of an Indiana business has long had the absolute right to exclude a visitor or customer, subject only to applicable civil rights laws."). This right to exclude would be of little utility if a business could exclude someone from inside their premises but be forbidden from excluding someone from standing at the very threshold of their entrance. *See Tymon v. M. L. S. Const. Co.*, 186 N.E. 429, 430 (N.Y. 1933) ("It would, indeed, be a novel idea that the stoop leading up to a man's front door could be

used by the public with the same freedom as the sidewalk, and that the owner had no right to exclude idlers and loafers.").

## Conclusion

[19] Under the facts and circumstances present here, we conclude that the trial court, acting as the trier of fact, could reasonably conclude that Sherrod was guilty of criminal trespass. Larimore told Sherrod to leave, and Sherrod slightly resisted Larimore's efforts to remove him. Once outside, Sherrod refused to leave and demanded to be let back inside. When Larimore left, Sherrod attempted to sneak back in via a doorway where others were exiting the club but was thwarted by Officer Garcia. Then, standing immediately in front of the door, Sherrod refused Officer Garcia's repeated requests to leave. We hold that this evidence was sufficient to support a conviction for criminal trespass, and we accordingly affirm the judgment of the trial court.

[20] Affirmed.

Bailey, J., and Bradford, J., concur.