

**FILED**

Mar 02 2017, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Deborah Markisohn<br>Marion County Public Defender Agency<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Tyler G. Banks<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larenda Jones,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 2, 2017<br><br>Court of Appeals Case No.<br>49A05-1606-CR-1433<br><br>Appeal from the Marion Superior Court<br><br>The Honorable James Snyder, Commissioner<br><br>Trial Court Cause No.<br>49G20-1507-F5-26471 |

**Mathias, Judge.**

[1] Larenda Jones ("Jones") appeals the order of the Marion Superior Court revoking her placement in community correction and sentencing her to serve the remainder of her executed sentence at the Department of Corrections ("DOC"). On appeal, Jones presents two issues, which we reorder and restate as: (1) whether the trial court erred by failing to inform Jones of her release

date, and (2) whether the trial court denied Jones the right to speak in allocution. Concluding that the trial court did not err in failing to inform Jones of her release date but that the trial court did err by refusing to let Jones speak in allocution, we reverse and remand.

## Facts and Procedural History

[2] On June 28, 2015, the State charged Jones with one count of resisting law enforcement as a Level 6 felony and one count of battery against a public safety official as a Level 5 felony. On August 31, 2015, Jones entered into a plea agreement with the State in which she agreed to plead guilty to the charge of battery against a public safety official and the State agreed to dismiss the charge of resisting law enforcement.[1] Pursuant to the agreement, Jones was to receive a sentence of three years, with two years on home detention through Marion County Community Corrections and one year suspended to probation. The trial court accepted the plea and, on September 9, 2015, sentenced Jones as provided in the plea agreement.

[3] On February 4, 2016, Jones admitted to violating the terms of her placement on home detention.[2] As a result, the trial court revoked this placement and instead

---

[1] The plea agreement also resolved another active criminal case against Jones and a pending allegation that Jones had violated the terms of her probation.

[2] The State had alleged that Jones left her residence without authorization, had been charged with the crime of theft, and had failed to comply with the rules, regulations, and financial obligations of community corrections.

ordered Jones to serve her sentence on work release at the Craine House Residential Center ("Craine House").

[4] On April 18, 2016, the State filed an allegation that Jones had violated the terms of her placement at Craine House. The trial court held a hearing on the matter on June 2, 2016. At this hearing, the State presented evidence that, on April 10 of that year, Jones argued with another inmate and, as she walked by this inmate, ran her shoulder into the back of the inmate, almost knocking her down. The State also alleged that, the next day, Jones and yet another inmate had a verbal altercation after Jones confronted the inmate. This altercation required the intervention of Craine House staff, who instructed Jones to go to her room, but Jones refused to comply.

[5] Jones testified on her own behalf at the hearing and explained that she had not been taking her prescribed medications to treat her mental health issues. She also claimed that, with regard to the first incident, she merely "brushed [past]" the other inmate. Tr. p. 27. With regard to the second incident, Jones acknowledged that she and the other inmate got into an argument, but claimed that it was a minor incident for which both parties apologized to each other. At the conclusion of the hearing, the trial court found that Jones had violated the conditions of her placement, revoked her placement in home detention, and sentenced her to serve two years in the DOC and one year on probation. In so doing, the trial court noted that Jones had been placed on "strict compliance" probation. Tr. p. 31.

[6] As the State was attempting to discuss credit time, Jones herself interjected and asked the court, "May I please say something?" Tr. p. 32. The trial court responded, "Ms. Jones that time is up." *Id.* As the parties continued their discussion regarding credit time, Jones again personally interjected, and the following exchange occurred between her and the trial court:

> [Jones]: And for how long DOC?
>
> [Court]: I'm sorry?
>
> [Jones]: And how long DOC? I mean basically I no longer my daughter a mother anymore [sic].
>
> [Court]: I can't give you an exact out date[.] [T]hat's something that DOC will give[.] I can assure you that we have factored in all of your credit, you will receive all of your credit and they will give you an estimated—
>
> [Jones]: Why can't I go to the PAIR program or anything[?] I have a daughter that's going to get tooken (sic) from me this month.
>
> [Court]: —they will give you an estimated projected release date, all right.

Tr. p. 36.

[7] The court then suggested that Jones have a "mental health probation officer" during her probation. Again, Jones asked, "[h]ow long DOC?" However, her question remained unanswered. Jones now appeals.

# *I. Release Date*

[8] Jones claims that the trial court was required to inform her of the possible release dates for her incarceration. She bases this argument on Indiana Code section 35-38-1-1, which provides:

> (a) Except as provided in section 1.5 of this chapter,[3] after a verdict, finding, or plea of guilty, if a new trial is not granted, the court shall enter a judgment of conviction.
>
> (b) *When the court pronounces the sentence*, the court shall advise the person that the person is sentenced for not less than the earliest release date and for not more than the maximum possible release date.

(emphasis added). Jones argues that subsection (b) of this statute required the trial court to inform her of her earliest possible release date and maximum possible release date.

[9] The State contends, however, that this statute is inapplicable to probation revocation proceedings, noting that subsection (a) refers to a verdict, finding, or plea of guilty and a judgment of conviction and that subsection (b) refers to what the trial court must do "[w]hen the court pronounces the sentence." The State argues that, read together, these subsections control only when the trial court is pronouncing the initial sentence, not when the court is revoking probation. We agree with the State.

---

[3] Indiana Code section 35-38-1-1.5, which is inapplicable here, provides in relevant part that a trial court "may enter judgment of conviction as a Level 6 felony with the express provision that the conviction will be converted to a conviction as a Class A misdemeanor if the person fulfills certain conditions."

[10] Our reading of Indiana Code section 35-38-1-1 is supported by our supreme court's holding in *Vicory v. State*, 802 N.E.2d 426, 429 (Ind. 2004). In *Vicory*, the court held that Indiana Code section 35-38-1-5 did not apply to probation revocation hearings because that statute, by its own terms, applied only when the court "pronounce[d] [its] sentence." 802 N.E.2d at 429. At a probation revocation hearing, the trial court has already "pronounced its sentence" within the meaning of Indiana Code section 35-38-1-5. *Id*. At a revocation hearing, the court does not pronounce a sentence but rather "decide[s] [whether] the previously suspended sentence should be executed." Thus, section 35-38-1-5 does not apply to revocation hearings.

[11] The same is true with regard to Indiana Code section 35-38-1-1(b), which also applies when the trial court "pronounces the sentence." Here, as in *Vicory*, the trial court had already pronounced its sentence when it initially sentenced Jones. At the revocation hearing, the court was not "pronounc[ing]" a new sentence; it was merely determining whether and how much of the already pronounced sentence should be executed. We therefore conclude that the trial court did not err by failing to inform Jones of her release date.

## II. *Allocution*

[12] Jones also claims that the trial court denied her the right to allocution. The right to allocution is of ancient origin. *See Vicory*, 802 N.E.2d at 429 (noting that the common law recognized the right to allocution as early as 1682). Our criminal code recognizes this right:

> *When the defendant appears for sentencing*, the court shall inform the
> defendant of the verdict of the jury or the finding of the court.
> The court shall afford counsel for the defendant an opportunity
> to speak on behalf of the defendant. *The defendant may also make a
> statement personally in the defendant's own behalf and, before
> pronouncing sentence, the court shall ask the defendant whether the
> defendant wishes to make such a statement.* Sentence shall then be
> pronounced, unless a sufficient cause is alleged or appears to the
> court for delay in sentencing.

Ind. Code § 35-38-1-5 (emphases added).

[13]    In *Vicory*, our supreme court held that Indiana Code 35-38-1-5 did not apply to probation revocation proceedings because, in such proceedings, the defendant does not "appear for sentencing." 802 N.E.2d at 429. Thus, the trial court is not required to ask the defendant at a probation revocation whether he wants to make a statement. *Id*. However, the court also held that "when the situation presents itself in which the defendant specifically requests the court to make a statement, as it did here, the request should be granted." *Id*.

[14]    The *Vicory* court based its holding in part on the fact that "[t]he Indiana Constitution 'places a unique value upon the desire of an individual accused of a crime to speak out personally in the courtroom[.]'" *Id*. (quoting *Sanchez v. State*, 749 N.E.2d 509, 520 (Ind. 2001)). The court also noted that the right of allocution is "'minimally invasive of the sentencing proceeding'" and that "'the requirement of providing the defendant a few moments of court time is slight.'" *Id*. (quoting *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991)). Because the purpose of allocution is to give the trial court the opportunity to consider

the facts and circumstances relevant to sentencing the defendant, and because a probation revocation "is indeed relevant to the defendant's sentencing," the court held that, even though the statute did not apply at probation revocation hearings, "the right of allocution should apply to probation revocation hearings." *Id.*

[15] Our supreme court addressed a similar question in *Woods v. State*, 892 N.E.2d 637 (Ind. 2008). In *Woods*, the question before the court was whether a probationer had the right to make a statement regarding why he violated his probation even though he, like Jones in the present case, was on "strict compliance" probation. The defendant in *Woods* admitted that he had violated the terms of his probation (by missing a scheduled drug screen), but when he asked if he could explain his failure, the trial court cut him off. Woods appealed and claimed that the trial court denied him due process by preventing him from explaining why he violated the terms of his probation. On transfer, our supreme court held that "strict compliance" was no excuse for not allowing the probationer to explain why he should not have his probation revoked. *Id.* at 641. Indeed, the court observed that "the very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect." *Id.* at 641. The court further held:

> We acknowledge that telling a defendant that he is on "strict compliance" is a dramatic way of putting him on notice that he is on a short leash and has been given one final chance to "get his act together." *Nonetheless due process requires that a defendant be given the opportunity to explain why even this final chance is deserving of*

*further consideration.* By denying Woods this opportunity, the trial court erred.

*Id.* (emphasis added).

[16] Jones argues that, based upon the holdings in *Vicory* and *Woods*, the trial court was required to permit her to make a statement on her own behalf. We agree.

[17] First, we note that although Jones was in a work release program, the holdings of *Vicory* and *Woods* still apply even though those cases involved probation. The due process requirements expressed by our supreme court for probation revocation proceedings are also required when the trial court revokes a defendant's placement in a community corrections program, which includes work release programs. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999).

[18] Thus, although the trial court was not required to ask Jones if she wished to make a statement, once she expressed a desire to make such a statement, the trial court should have allowed her to do so, as due process required that she be permitted to speak. *Vicory*, 802 N.E.2d at 429; *Woods*, 892 N.E.2d at 641. However, the trial court's failure to allow Jones to speak separately in allocution does not automatically entitle her to reversal.

[19] The *Vicory* court also held that "[w]hen the defendant is given the opportunity to explain his view of the facts and circumstances, the purpose of the right of allocution has been accomplished," because "the right of allocution was not given to 'seek mitigating evidence or a plea for leniency, but rather to give the defendant a formal opportunity to show one of the strictly defined legal grounds

for avoidance or delay of the sentence.'" *Id*. at 429-30 (quoting *Minton v. State*, 400 N.E.2d 1177, 1180 (Ind. Ct. App. 1980)).

[20] The defendant in *Vicory* testified at his probation revocation hearing and explained why his probation should not be revoked and gave the trial court the opportunity to consider facts and circumstances relevant to the revocation of his probation. *Id*. He also failed to identify any statement or argument that he would have made had the trial court granted his request to make a statement. *Id*. Thus, "the court's refusal did not affect his substantive rights such that reversal is warranted." *Id*.

[21] The State claims that Jones's testimony during the probation revocation hearing obviated the need for her to make a statement before sentencing, citing *Vicory.* However, we do not read *Vicory* to mean that any time the defendant testifies at a probation revocation hearing, that this extinguishes her right to make a statement regarding why her probation should not be revoked. Instead, we read the holding in *Vicory* to mean that, if the testimony satisfies the purpose of allocution, i.e., the defendant was adequately able to explain why his or her probation should not be revoked, then there is no harm if the defendant is denied the opportunity to make a further statement in allocution. In *Vicory*, the defendant "did in fact address the court and was able to tell his side of the story," which is "essentially what the right of allocution would have allowed him to do." *Id*. at 430. Moreover, Vicory was able to speak about why his probation should not be revoked and gave the trial court the opportunity to consider facts and circumstances relevant to the revocation of his probation. *Id*.

[22] Here, Jones's testimony at the revocation hearing explained her side of the story as to the allegations that she violated the terms of her placement. An important part of her testimony was her assertion that her failure to take the medication prescribed for her mental health issues played a part in the causation of her objectionable behavior. The trial court inferentially noted the critical nature of this issue when it suggested that Jones be assigned a mental health probation officer *after* she served two years of her sentence balance in DOC.[4]

[23] In addition, Jones complains that, in her testimony, she was not afforded an opportunity to explain to the trial court why her placement should not be revoked, i.e., because of the impact incarceration would have on her ability to parent her child. Pursuant to *Woods*,[5] even a probationer on "strict compliance" should be afforded an opportunity to explain to the trial court "why even this final chance is deserving of further consideration." 892 N.E.2d at 641.

[24] When Jones understood that she would be serving part of her sentence in DOC, she attempted to speak up on her own behalf to request alternative sentencing.

---

[4] There is no evidence as to whether she was assigned a mental health probation officer at the time of her violation of her placement in the work release center.

[5] The State also argues that, as in *Woods*, Jones is not entitled to relief because she failed to make an offer to prove what she would have said had he been given the chance to make a statement to the court. *See Woods*, 892 N.E.2d at 642. Jones acknowledges that she did not make a formal offer of proof regarding what she would have said to the trial court. She instead argues that her "inartful attempts to inform the trial court of her concerns that revocation would impact her ability to continue to parent her daughter" were sufficient to preserve the issue for appeal. Appellant's Br. p. 12. We agree. Jones informed the trial court that she wished to speak and mentioned that placement in DOC would impair her ability to parent her daughter. Although she did not make a formal offer of proof, the content of her proposed statement is sufficiently clear in context for us on appeal to determine the admissibility of the statement and whether prejudice resulted from its exclusion. *See Woods*, 892 N.E.2d at 641 (noting that the purpose of an offer of proof is to convey the point of the testimony and provide the trial court the opportunity to reconsider the evidentiary ruling).

In response, the trial court indicated that Jones's "time [to speak] [wa]s up." Tr. p. 32. In the face of silence from her counsel, Jones continued to speak, in panicked bursts between statements from the bench, in order to inform the trial court that incarceration would end her ability to be a parent. Specifically, she said that incarceration would mean that she was "no longer my daughter a mother [sic] anymore," and that her daughter would be taken from her. *Id.* at 36. However, her statements were made at a time when the trial court had clearly made up its mind.

[25] Considering the important allocution issues that were not allowed to be fully developed, we believe that Jones should be afforded a new and full opportunity for allocution. We find support for our conclusion in the recent case of *Owens v. State*, ___ N.E.3d ___, 2017 WL 410217, No. 49A02-1605-CR-1142 (Ind. Ct. App. Jan. 31, 2017). In *Owens*, the trial court denied the defendant a right to speak on his own behalf at sentencing despite his attorney's efforts to secure such an opportunity for the defendant. The *Owens* court held that the brief, pre-trial statement made by Owens's attorney did not cure the error of refusing to let the defendant make a statement in allocution. *Id.* at slip op. p. 7. The *Owens* court continued: "The record indicates that the trial court judge had made up his mind before pronouncing the sentence and did not feel obligated or interested to hear what defense counsel or Owens had to say, beyond the brief, curtailed statement defense counsel had already made on Owens's behalf." *Id.* at 7-8. The *Owens* court therefore held that the trial court's failure to permit Owens or his counsel to make a statement prior to sentencing "constitute[d] a clear denial of Owens's

right to due process[.]" *Id.* at 8. Therefore, the court reversed and remanded for a new sentencing hearing at which Owens and his counsel could be heard. *Id.* at 9.

[26] The same is true here. Jones was denied the right to speak on her own behalf because the trial court had already made up its mind and was not inclined to listen to what Jones had to say. Accordingly, we reverse the trial court's decision to revoke Jones's placement in work release and remand with instructions that Jones be given the opportunity to make a statement to the court regarding why her placement should not be revoked and why she should not be placed in DOC. The trial court will of course still be free to exercise its considerable discretion in how to weigh Jones's statement, but Jones nevertheless has a right to personally make a statement.

## Conclusion

[27] We reject Jones's argument that the trial court erred by failing to inform her of her release date, as the statute on which she relies is inapplicable to revocation proceedings. However, the trial court should have permitted Jones to make an allocution statement when she requested to speak. We therefore reverse the trial court's revocation of Jones's placement and remand with instructions to allow Jones a full and clear opportunity for allocution.

[28] Reversed and remanded.

Pyle, J., concurs.

Baker, J., concurs with a separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Larenda Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
49A05-1606-CR-1433

**Baker, Judge, concurring.**

I fully concur with the majority opinion. I write separately to urge our Supreme Court to revisit its interpretation of the right of allocution as codified in Indiana Code section 35-38-1-5. For two reasons, I believe that a broader interpretation of "sentencing" would be the best practice. First, the right of allocution, in my view, is a fundamental right of every criminal defendant who faces a potential loss of freedom. Furthermore, every trial judge who is about to order said loss of freedom is aided when a defendant is permitted to explain to the court the potential consequences of a prison term. This is no less true in the context of a revocation of probation than it is in the context of the original pronouncement of the defendant's sentence. I believe that a broader interpretation of

"sentencing" should encompass probation revocation proceedings so that this fundamental right is secure during each point in time when the defendant faces a loss of freedom.

[30] Second, I believe that a consistent rule will be easier for trial judges to manage. In other words, trial courts already have to ask the defendant at the initial sentencing hearing whether he wants to make a statement on his own behalf but are not currently required to do so at probation revocation hearings. In my view, it would simplify matters considerably to hold, across the board, that trial courts must make this inquiry on any occasion when the court is about to impose incarceration on a defendant. In that way, the inquiry becomes a routine that cannot be overlooked or questioned. For these two reasons, I hope that our Supreme Court will revisit this issue, holding that Indiana Code section 35-38-1-5 does, in fact, apply to probation revocation proceedings.